**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOHN DOE,

     Plaintiff,

         v.

AMERICAN UNIVERSITY,

     Defendant.

Civil Action No. 25-3866

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff John Doe was an undergraduate student at American University from 2021 to 2024. <u>See</u> ECF No. 1 (Compl.), ¶ 3. He alleges that he and another student — identified as Jane Roe — engaged in a romantic relationship that included consensual encounters as well as incidents in which Roe sexually assaulted or coerced him. <u>Id.</u>, ¶¶ 8–24. After the relationship deteriorated, Roe accused Doe of sexual misconduct while allegedly denying her own conduct, and her repeated communications and accusations caused Plaintiff significant psychological distress. <u>Id.</u>, ¶¶ 25–32.

Doe initiated a formal complaint with the University's Office of Equity and Title IX in 2022, alleging that Roe had sexually assaulted, harassed, and stalked him. <u>Id.</u>, ¶¶ 43–44. Although Plaintiff initiated the Title IX process, the course of the investigation resulted in his being both a complainant and a respondent. <u>Id.</u>, ¶ 3. The University ultimately found Doe at fault and imposed sanctions, including suspension, which prevented him from continuing his studies and delayed his graduation. <u>Id.</u>, ¶¶ 89, 110. Doe alleges that the investigation and adjudication were biased against him on the basis of sex, failed to credit exculpatory evidence,

1

relied on false or misleading statements, and departed from the University's own policies and procedures.  Id., ¶¶ 45–55, 62, 80–101.  Seeking redress, he brought suit against the University asserting a panoply of claims: breach of contract, breach of the implied covenant of good faith and fair dealing, sex discrimination in violation of Title IX, violations of the District of Columbia Human Rights Act, and negligence.  Id., ¶¶ 111–197.

Accompanying Doe's Complaint is a Motion to Proceed Pseudonymously, though that title is a bit of a misnomer.  See ECF No. 2 (Pseudo. Mot.).  As Plaintiff explains, "The first part is a motion to proceed under pseudonym and to refer to witnesses and parties . . . by pseudonym."  Id. at 1.  "The second part" seeks "to seal or redact exhibits which would identify the Plaintiff and certain non-parties to the public."  Id.  Plaintiff has also filed a separate Motion to Seal, seeking to redact footnotes in the Complaint containing hyperlinks to news articles that could identify the pseudonymous parties.  See ECF No. 5 (Sealing Mot.).  The Court will thus treat the Motions together as a combined request to proceed pseudonymously and to partially seal the case.  It will grant both Motions in part, subject to any further consideration by the United States District Judge to whom this case is randomly assigned.  See LCvR 40.7(f) (providing that Chief Judge shall "hear and determine . . . motion[s] to file a pseudonymous complaint"); id. 5.1(h)(1) ("Absent statutory authority, no case or document may be sealed without an order from the Court.").

## I.    Legal Standard

Generally, a plaintiff filing a civil action must identify the parties and file on the public docket.  See Fed. R. Civ. P. 10(a); LCvR 5.1(c)(1).  Since Plaintiff seeks to proceed both pseudonymously and under seal, the Court reviews the legal standards for both Motions.

A.    <u>Pseudonymity</u>

This identification requirement reflects the "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' and, more specifically, from the tradition of open judicial proceedings." <u>In re Sealed Case</u>, 931 F.3d 92, 96 (D.C. Cir. 2019) (quoting <u>Wash. Legal Found. v. U.S. Sent'g Comm'n</u>, 89 F.3d 897, 899 (D.C. Cir. 1996)).  A party moving to proceed pseudonymously thus "bears the weighty burden of both demonstrating a concrete need for such secrecy[] and identifying the consequences that would likely befall it if forced to proceed in its own name."  <u>In re Sealed Case</u>, 971 F.3d 324, 326 (D.C. Cir. 2020).  As a result, the court must "'balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure'" by applying a "flexible and fact driven" balancing test.  <u>Id.</u> (quoting <u>In re Sealed Case</u>, 931 F.3d at 96).  That test assesses "five non-exhaustive factors":

> [1] whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature;
>
> [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties;
>
> [3] the ages of the persons whose privacy interests are sought to be protected;
>
> [4] whether the action is against a governmental or private party; and, relatedly,
>
> [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

<u>Id.</u> at 326–27 (quoting <u>In re Sealed Case</u>, 931 F.3d at 97) (first alteration in original).

3

B.    <u>Sealing</u>

"The starting point in considering a motion to seal court records is a strong presumption in favor of public access to judicial proceedings." <u>Hardaway v. D.C. Hous. Auth.</u>, 843 F.3d 973, 980 (D.C. Cir. 2016) (quoting <u>EEOC v. Nat'l Children's Ctr., Inc.</u>, 98 F.3d 1406, 1409 (D.C. Cir. 1996)).  When a party seeks to overcome this presumption and seal court records, courts engage in the six-factor inquiry described in <u>United States v. Hubbard</u>, 650 F.2d 293 (D.C. Cir. 1980). Those factors are:

> [1] the need for public access to the documents at issue;

> [2] the extent of previous public access to the documents;

> [3] the fact that someone has objected to disclosure, and the identity of that person;

> [4] the strength of any property and privacy interests asserted;

> [5] the possibility of prejudice to those opposing disclosure; and

> [6] the purposes for which the documents were introduced during the judicial proceedings.

<u>Nat'l Children's Ctr., Inc.</u>, 98 F.3d at 1409 (citing <u>Hubbard</u>, 650 F.2d at 317–22).

## II.    Analysis

The Court separately addresses pseudonymity and then sealing.

A.    <u>Pseudonymity</u>

Plaintiff has met his burden to show that his privacy interests outweigh the public's presumptive and substantial interest in learning his identity.

The first factor strongly supports Plaintiff's Motion as this case concerns the type of "sensitive and highly personal information" that pseudonymity is meant to protect.  <u>In re Sealed Case</u>, 971 F.3d at 327 (quotation marks and citation omitted).  Doe does not seek to proceed

pseudonymously "merely to avoid the annoyance and criticism that may attend any litigation." Id. at 326 (quoting In re Sealed Case, 931 F.3d at 97).  Rather, his "complaint deals directly with allegations of Rape[,] . . . describ[ing] in detail how it happened to him and how it affected him medically."  Pseudo. Mot. at 3.  The "sensitive and highly personal information" in pseudonymous litigation "commonly involves intimate issues such as sexual activities."  In re Sealed Case, 971 F.3d at 327; see also Doe v. Cabrera, 307 F.R.D. 1, 5 (D.D.C. 2014) ("Courts generally allow a plaintiff to litigate under a pseudonym in cases containing allegations of sexual assault because they concern highly sensitive and personal subjects."); Doe v. De Amigos, LLC, 2012 WL 13047579, at *2 (D.D.C. Apr. 30, 2012) ("Courts have granted anonymity to protect against disclosure of . . . sexual assault.") (quotation marks omitted).

The second factor lends equal weight to Plaintiff's Motion.  That factor favors pseudonymity when disclosure poses a "risk of retaliatory physical or mental harm" to plaintiffs or "innocent non-parties."  In re Sealed Case, 971 F.3d at 326 (quoting In re Sealed Case, 931 F.3d at 97).  Doe alleges that his encounters with Roe and the ensuing investigatory process caused significant mental-health harms, including panic attacks, sleep disturbances, and multiple instances of suicidal ideation.  See Compl., ¶¶ 30–32, 42.  As a result, he "has been in psychological and pharmacological treatment for his symptoms," and revealing his identity risks exacerbating those symptoms.  See Pseudo. Mot. at 4–5.  Doe supports his claim with attached medical records.  See ECF No. 2-2 (Redacted Psych. Eval.).  The risk of such mental harm thus weighs in favor of allowing Plaintiff to proceed pseudonymously.  Zoe v. United States, 2025 WL 1676040, at *2 (D.D.C. June 13, 2025) (harms associated with public disclosure of victimization sufficient to support pseudonymity); Doe v. Roman Catholic Diocese of

Greensburg, 2021 WL 12137383, at *7 (D.D.C. Feb. 12, 2021) (pseudonymity warranted where plaintiff "would likely suffer further emotional trauma" if abuse disclosed).

In contrast to the first and second factors, the third cuts against the Motion. Plaintiff is not a minor and does not allege that disclosure of his identity would affect the safety or welfare of any minor. See In re Sealed Case, 971 F.3d at 326.

The fourth factor similarly disfavors pseudonymity. Typically, "anonymous litigation is more acceptable when the defendant is a governmental body because government defendants 'do not share the concerns about "reputation" that private individuals have when they are publicly charged with wrongdoing.'" J.W. v. Dist. of Columbia, 318 F.R.D. 196, 201 (D.D.C. 2016) (quoting Cabrera, 307 F.R.D. at 8). American University is a private litigant that will "presumably have concerns" about its reputation, Doe 1 v. George Washington Univ., 369 F. Supp. 3d 49, 67 (D.D.C. 2019), which Plaintiff concedes. See Pseudo. Mot. at 5. If American University had already suffered meaningful reputational harm arising from prior administrative proceedings involving Doe, its interests under this factor would be diminished, and the balance might favor pseudonymity. See Cabrera, 307 F.R.D. at 8; but see Doe 1, 369 F. Supp. 3d at 67 (explaining that unrelated investigations do not necessarily mitigate reputational consequences of litigation itself). Here, however, Doe explains that "the process has been kept confidential." Pseudo. Mot. at 7. Because there is no indication that American has already incurred reputational harm from those proceedings, this factor weighs against permitting Plaintiff to proceed under a pseudonym.

Plaintiff fares better under the fifth factor. Defendant would suffer no "risk of unfairness" if Plaintiff's Motion were granted, In re Sealed Case, 971 F.3d at 326 n.1, as he has offered to provide his identity to Defendant. See Pseudo. Mot. at 6; see also Doe v. NFL, 2025

WL 2732748, at *2 (D.D.C. Sept. 25, 2025) (finding fifth factor favors pseudonymity when plaintiff is willing to disclose name to defense counsel).

Although a majority of the above factors support permitting Doe to proceed pseudonymously, Plaintiff's Motion also seeks to extend pseudonymity to Roe and other students who participated in the investigatory process. See Pseudo. Mot. at 1. That request, while unusual, is not without precedent. See, e.g., Doe v. Roe, 2025 WL 2651241, at *3 (D.D.C. Sept. 16, 2025) (granting plaintiff's motion on behalf of defendant to proceed pseudonymously); Doe v. Am. Univ., No. 19-3097, ECF No. 2 (Mem. Op. & Order) at 6 (D.D.C. Oct. 10, 2019) (extending pseudonymity to "Jane Roe and the other students associated with the sexual assault complaint"); Doe v. George Washington Univ., No. 18-553, ECF No. 2 (Order) at 1 (D.D.C. Mar. 8, 2018) (directing that "parties shall refer to plaintiff . . . as John Doe," his accuser as "Jane Roe," and other students by their initials). Plaintiff alleges that Roe "raped and beat him," and he accuses the other students of "submitt[ing] false, misleading, or factually impossible statements." See Pseudo. Mot. at 6. Doe understandably acknowledges that Roe and the other students are private individuals and non-parties with legitimate reputational interests, and that they "will have their reputations harmed while not being present to defend themselves." Id. at 5. Given the unique circumstances of this case, the Court concludes that Roe and the other students may remain pseudonymous.

In sum, while the third and fourth factors weigh against the Motion, the remaining factors favor permitting Plaintiff to proceed under a pseudonym at this stage. Because Doe persuasively shows that the same interests favor pseudonymity for Roe and the other students, the Court will extend them that protection as well.

7

B.    Sealing

Plaintiff does not seek to seal the entire case, though he acknowledges that he "is seeking . . . slightly wider sealing" than in typical circumstances.  See Pseudo. Mot. at 9.  He identifies seven categories of materials he wishes to seal: mentions of student names in unspecified documents; exhibits displaying images of Plaintiff; recordings allegedly provided by Roe; recordings of live hearings containing the names and voices of Plaintiff, Roe, and witnesses; specific dates and descriptions of events in the Complaint itself; Plaintiff's contact information; and his name as it appears in the independent psychiatric evaluation.  See Pseudo. Mot. at 10.  He separately moves to redact footnotes in the Complaint containing hyperlinks to news articles that could identify the pseudonymous parties.  See Sealing Mot. at ECF pp. 1–2.

The Court concludes that Doe has met his burden to overcome the presumption in favor of public access to court records as it applies to identifying information in his psychiatric evaluation and the details he seeks to redact in the Complaint, both of which have already been filed with the Court.  It will analyze each Hubbard factor in turn.

The first factor — "the need for public access to the documents at issue," Nat'l Children's Ctr., 98 F.3d at 1409 — weighs in favor of sealing.  Plaintiff proposes only minimal redactions: removing identifying information from medical records, excising specific dates and event descriptions from the Complaint's body text, and removing hyperlinks to news articles from the Complaint's footnotes.  See Pseudo. Mot. at 10–11; Sealing Mot. at ECF pp. 1–2.  He seeks to redact this information not to conceal the nature of his claims from public view but "to obscure information that could be used to identify" the pseudonymous parties while leaving the underlying claims fully accessible.  Doe v. McHenry, 2025 WL 596650, at *2 (D.D.C. Jan. 31,

8

2025).  This "targeted" request tips the first factor in favor of sealing.  Monbo v. United States, 2023 WL 7129866, at *1 (D.D.C. Sept. 7, 2023).

The second factor is neutral.  Because the public has had no prior access to the psychiatric evaluation, this factor neither favors nor disfavors sealing as to those materials.  See United States ex rel. Grover v. Related Cos., LP, 4 F. Supp. 3d 21, 26 (D.D.C. 2013); CNN, Inc. v. FBI, 984 F.3d 114, 119 (D.C. Cir. 2021) (second factor "should consider the public's previous access to the sealed information, not its previous access to the information available in the overall lawsuit").  As to the dates, event details, and footnotes in the Complaint, prior public reporting about the underlying events might ordinarily cut against sealing, as it suggests the information is already in the public domain.  See Patel v. Garland, 2023 WL 7536574, at *2 (D.D.C. Nov. 13, 2023).  But that logic inverts here: the footnote hyperlinks point directly to news articles that could be used to identify the parties, and the dates and specific details in the Complaint could be cross-referenced against those very articles to the same effect.  Permitting those details to remain on the public docket would thus render pseudonymity a nullity.  This factor is accordingly neutral across all categories.

The third factor lends more wind to Plaintiff's sails: "[T]he fact that a party moves to seal the record weighs in favor of the party's motion."  Zapp v. Ye Gon, 746 F. Supp. 2d 145, 149 (D.D.C. 2010).  As is customary at this stage, no objection to the Motions have been filed.

The fourth factor — "the strength of any property and privacy interests asserted," Nat'l Children's Ctr., 98 F.3d at 1409 — also weighs in Plaintiff's favor.  Hubbard recognized that valid privacy interests may be asserted in "documents which reveal the intimate details of individual lives, sexual or otherwise."  650 F.2d at 324.  The underlying dispute involves allegations of a sensitive and intimate nature, and Plaintiff seeks to redact personal health

information and private contact details that could be used to identify the parties to that dispute. See Pseudo. Mot. at 10. His psychiatric evaluation contains mental-health records developed in the course of treatment for injuries he attributes in part to sexual assault and an allegedly biased disciplinary proceeding. Id. at 4; Compl., ¶¶ 30–32. Courts have found that personal health information and private contact details warrant sealing where, as here, they could be used to identify parties to an alleged sexual-assault dispute. See Doe v. Roe, 2025 WL 2651241, at *4. And the dates, event details, and hyperlinked footnotes in the Complaint, if left unredacted, could allow a reader to piece together the identities of the parties. The fourth factor therefore favors sealing.

The fifth factor considers whether, in future litigation, disclosure would prejudice the party seeking to seal the record. See Hubbard, 650 F.2d at 321. Plaintiff contends that this factor favors sealing because "continued exposure is very likely to harm [his] mental health." Pseudo. Mot. at 13. That assertion, however, conflates prejudice with general harm. The appropriate inquiry is whether disclosure would legally prejudice Plaintiff. See United States v. All Assets Held at Bank Julius Baer & Co., 520 F. Supp. 3d 71, 85 (D.D.C. 2020) ("The possibility of prejudice refers to 'whether disclosure of the documents will lead to prejudice in future litigation to the party seeking the seal.'") (quoting United States ex rel. Durham v. Prospect Waterproofing, Inc., 818 F. Supp. 2d 64, 68 (D.D.C. 2011)). As Plaintiff has identified no such prejudice, this factor is neutral.

The sixth and final factor — "the purposes for which the documents were introduced," Nat'l Children's Ctr., 98 F.3d at 1409 — is split. Disclosure is the norm where "the parties explicitly intended the Court to rely on [the sealed] materials in adjudicating their dispute." Vanda Pharms., Inc. v. FDA, 539 F. Supp. 3d 44, 57 (D.D.C. 2021) (quoting Berliner Corcoran

& Rowe LLP v. Orian, 662 F. Supp. 2d 130, 135 (D.D.C. 2009)).  Where a party seeks to seal only limited portions of the pleadings that are not at issue in the case, however, this factor can favor sealing.  See Gilliard v. McWilliams, 2019 WL 3304707, at *5 (D.D.C. July 23, 2019) ("There is 'less of a pressing concern to unseal [records] if they are not relevant to the claims.'") (quoting Durham, 818 F. Supp. 2d at 69).  The psychiatric evaluation bears directly on Plaintiff's damages claims, and the dates and event descriptions are relevant to the underlying dispute over the University's handling of the alleged assault.  The hyperlinked footnotes, by contrast, serve no adjudicative purpose.  They provide contextual references to outside news articles that are not necessary for resolving Plaintiff's claims.  This factor therefore weighs in favor of disclosure as to the former and favors sealing as to the latter.

On balance, while the sixth Hubbard factor favors disclosure as to most materials, three factors favor sealing and two are neutral.  The Court will thus grant Plaintiff's request to seal portions of his psychiatric evaluation and Complaint.

The Court declines to rule on the remaining five categories of materials identified in the Motion.  Plaintiff asks the Court to seal materials including recordings, images, and other documents not yet filed on the docket.  See Pseudo. Mot. at 10.  But this request stretches beyond this Court's preliminary review and into the case-management responsibilities that the particular judge overseeing this litigation will undertake.  See LCvR 40.7(f) (consigning review of "motion[s] to seal the complaint" to Chief Judge).  Because Plaintiff has already filed his Complaint and seeks only to file future documents under seal, the Court will deny this part of the Motion without prejudice.

III.    Conclusion

The Court accordingly ORDERS that:

11

1. Plaintiff's [2] Motion to Proceed Pseudonymously and [5] Motion to File Under Seal are GRANTED IN PART and DENIED IN PART;

2. All parties shall use the pseudonyms listed in the Complaint in all documents filed in this action;

3. Plaintiff's redacted Complaint and exhibit shall remain on the public docket; and

4. Within five days of this Order, Plaintiff shall file under seal a declaration containing his real name and residential address.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  March 31, 2026

12