# EXHIBIT B

# AMERICAN UNIVERSITY
## W A S H I N G T O N ,  D C



## University Policy: Title IX Sexual Harassment Policy

**Policy Category:** Community

**Subject:** Sexual Harassment, Dating and Domestic Violence, Sexual Assault, and Stalking Related to Title IX

**Responsible Executive:** Vice President of People and External Affairs **Offices**

**Responsible for Review of the Policy:** Office of Equity and Title IX

**Supplemental Documents:** Related Local and Federal Laws:
- *Title IX of the Education Amendments of 1972* prohibits sex discrimination by educational institutions ("Title IX").
- *Violence Against Women Act 2013* requires colleges and universities to address and prevent campus sexual violence.

**Related University Policies:** Student Conduct Code, WCL Honor Code, Faculty Manual, WCL Faculty Manual, Staff Personnel Policies Manual

## I.    SCOPE

Members of the University community covered by this Policy include, but are not limited to, faculty, staff, and students of American University, and related third-parties (such as applicants for admission and employment, vendors, guests, contractors, and program participants) (collectively "AU Community"). This Policy applies to all University education programs and activities in the United States, whether on or off campus. The University will address complaints related to an AU Community member's participation in those programs and activities.

This Policy addresses the procedures for reporting and responding to incidents of sexual harassment as defined in this Policy that occurs in the University's education programs and activities and occurs in the United States. This Policy is intended to be consistent with the University's compliance obligations under the Title IX regulations issued by the U.S. Department of Education.

This Policy does not cover incidents of sexual harassment that (1) are not so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the University's education program or activity; (2) do not occur in the University's education programs and activities; or (3) do not occur in the United States. If those incidents of alleged sexual harassment fall outside the scope or jurisdiction of Title IX and this Policy, then the University's Discrimination and Non-Title IX Sexual Misconduct Policy will address the procedures for reporting and responding to those incidents.

## II.    POLICY STATEMENT

American University does not discriminate on the basis of sex in the education program or

1

activity that it operates, which includes admission and employment. Consistent with the procedures set forth and referenced in this Policy, the University will take steps to eliminate Title IX Sexual Harassment, prevent its recurrence, and remedy any discriminatory effects for members of the AU Community.

It is the responsibility of every member of the AU Community to foster an environment free of Title IX Sexual Harassment. All members of the AU Community are encouraged to take reasonable and prudent actions to prevent or stop an act of Title IX Sexual Harassment. Taking action may include direct intervention when safe to do so, enlisting the assistance of friends, contacting law enforcement, or seeking assistance from a person in authority.

The procedures contained in this Policy are designed to enable the University to respond to reports in good faith, in accordance with applicable law, and in a manner that promotes fairness, impartiality, and prompt resolution for all parties. Not all circumstances can be fully accounted for in this Policy. The University reserves flexibility and the right to modify its procedures or to take other administrative action as it deems appropriate to address applicable legal requirements or unique circumstances.

The University also does not tolerate other types of sexual harassment and sexual misconduct that fall outside Title IX Sexual Harassment covered under this Policy. Allegations of discrimination and other misconduct on the basis of sex that are not covered by this Policy may be governed by other university policies, as appropriate, including but not limited to:

- Student Conduct Code
- Discrimination and Non-Title IX Sexual Misconduct Policy
- Faculty Manual
- Staff Personnel Policies Manual

If an alleged incident of sexual misconduct does not fall within the scope of this Policy, the alleged incident of sexual misconduct may be in violation of another University policy and will be handled under the applicable University process/procedure. **Therefore, the University strongly encourages AU Community members to consult the University's Discrimination and Non-Title IX Sexual Misconduct Policy to understand how an alleged incident of sexual misconduct that does not fall within the scope of this Policy is addressed.**

In some cases, reports of Title IX Sexual Harassment may include additional allegations of discrimination or misconduct that are not covered by this Policy. The Title IX Coordinator or designee, in consultation with the appropriate university administrator responsible for resolving the additional allegations, will assess the information in order to determine which process will be used for resolving the additional allegations. This is to avoid confusion about parties/facts/procedures, and to prevent duplication of resolution efforts.

This Policy supersedes any conflicting information in any other University policy with respect to the definitions or procedures relating to Title IX Sexual Harassment within the scope of this Policy, and provides the exclusive remedy for alleged Title IX Sexual Harassment within the scope of this Policy.

Any inquiries about the application of this Policy may be referred to the University's Title IX Coordinator, to the United States Department of Education Assistant Secretary, or both.

**Complaint Resolution**

The University will respond promptly to Title IX Sexual Harassment, as defined under this Policy, when the University has actual knowledge of Title IX Sexual Harassment in its education programs and activities that occurs against a person in the United States. The University will take appropriate action in response to a report of Title IX Sexual Harassment pursuant to this Policy. AU Community members who have relevant information are expected to cooperate with the Title IX Sexual Harassment grievance process.

**Retaliation**

The University prohibits retaliation against a member of the AU Community for reporting and/or filing a Formal Complaint of Title IX Sexual Harassment, assisting in the reporting and/or filing of a Formal Complaint, and/or participating in the investigation or resolution of a Formal Complaint. Retaliation is defined as an adverse action or other form of negative treatment, including, but not limited to, intimidation, threats, coercion, discrimination or harassment, carried out in response to a good-faith reporting of, or opposition to, discrimination, harassment, or related misconduct; an individual's or group's participation, including testifying or assisting in the University's grievance process or response to a Formal Complaint; an individual's or group's refusal to participate in the University's grievance process or response to a Formal Complaint; or other forms of good faith opposition to what an individual reasonably believes to be Title IX Sexual Harassment under this Policy. To be a Policy violation, the challenged actions or treatment must be sufficiently serious to discourage a reasonable person from further reporting, participating, or opposing participation. Charging an individual with a Policy violation for making a materially false statement, in bad faith, in the course of the University's complaint process or in response to a complaint does not constitute Retaliation.

## III.    DEFINITIONS

A. **Actual Knowledge.** Actual knowledge means notice of Title IX Sexual Harassment or allegations of Title IX Sexual Harassment to the University's Title IX Coordinator, Dean of Students, Vice President of Campus Life, Deputy Provost, Dean of Faculty, Provost, Deans, Assistant Vice President of Human Resources, and Vice President of People and External Affairs.

B. **Complainant.** Complainant means any AU Community member who is alleged to have been the subject of conduct that could constitute Title IX Sexual Harassment under the terms of this Policy.

C. **Calendar Day.** Calendar day is defined as every day of the month, excluding weekends and university holidays, in which the University is open to the public for conducting business.

D. **Consent.** Consent is defined as words or conduct indicating a freely given agreement to have sexual intercourse or to participate in sexual activities. Silence or lack of resistance does not imply consent. Consent for one sexual act does not imply consent for any subsequent sexual act, and consent must be on-going. Sexual contact will be considered

3

"without consent" if no clear consent, verbal or non-verbal, is given; if inflicted through force, threat of force, or coercion; or if inflicted upon a person who is unconscious or who otherwise reasonably appears to be without the mental or physical capacity to consent.

(1) **Age of Consent.** The age of consent in the District of Columbia is sixteen (16) years of age. Individuals younger than 16 years of age are legally incapable of giving consent to sexual activity with an individual who is four or more years older.

(2) **Coerce.** Coerce is to force one to act based on fear of harm to self or others. Means of coercion may include, but are not limited to, pressure, expressed or implied threats, intimidation, or the threat or use of physical force. Coercion also includes forcing a person to act by impairing the faculties of that person through the administration of a substance.

(3) **Incapacitation.** Incapacitation is defined as a temporary or permanent state in which an individual is unable to give consent to sexual contact due to mental, developmental, or physical impairment, to include incapacitation, voluntarily or involuntarily, from alcohol or drug use. States of incapacitation include, but are not limited to: sleep, unconsciousness, intermittent consciousness, or any other state in which an individual is unaware that sexual contact is occurring. Where alcohol or drug use is involved, incapacitation is a state beyond mere intoxication, or impairment of judgment.

E.  **Education Program or Activity.** Education program or activity means every program or activity under the operations of the University, whether on or off campus. Education program or activity includes locations, events, or circumstances in which the University exercised substantial control over both the Respondent and the context in which the Title IX Sexual Harassment occurred, and also includes any building owned or controlled by a student organization that is officially recognized by the University.

F.  **Formal Complaint**. Formal Complaint means a document filed by a Complainant, or signed by the Title IX Coordinator, alleging Title IX Sexual Harassment against a Respondent and requesting that the University investigate the allegation of Title IX Sexual Harassment.

(1) Document Filed by a Complainant. Document filed by a Complainant means a document or electronic submission that contains the Complainant's physical or digital signature, or otherwise indicates that the Complainant is the person filing the Formal Complaint. A third party can report an allegation of Title IX Sexual Harassment committed against another member of the AU Community, but cannot file a Formal Complaint on that community member's behalf.

G.  **Preponderance of the Evidence.** Preponderance of the Evidence means a measure of proof that would lead a reasonable person to accept as "more likely than not" that a fact is true or that an incident occurred.

4

H. **Respondent.**  Respondent means an AU Community member, within the United States, who has been reported to have been the perpetrator of conduct that could constitute Title IX Sexual Harassment.

I. **Supportive Measures.**  Supportive Measures mean non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant or the Respondent before or after the filing of a Formal Complaint or where no Formal Complaint has been filed.  Supportive Measures are designed to restore or preserve access to the University's education programs and activities, and to protect the safety of all parties and the University's educational environment while not being punitive in nature or unreasonably burdensome to any party. The Title IX Coordinator is responsible for ensuring the implementation of Supportive Measures and coordinating the University's response with the appropriate offices on campus. The Title IX Coordinator or designee has the discretion to impose and/or modify any Supportive Measure based on all available information, and is available to meet with a Complainant or Respondent to address any concerns about the provision of Supportive Measures. The University will maintain the privacy of any Supportive Measures provided under this Policy to the extent that maintaining such confidentiality will not impair the University's ability to provide the Supportive Measures, and the University will promptly address any violation of a Supportive Measure.

J. **Title IX Sexual Harassment:**  Title IX Sexual Harassment means conduct on the basis of sex that satisfies one or more of the following:

    (1) A University employee conditioning the provision of a University aid, benefit, or service on an individual's participation in unwelcome sexual conduct

    (2) Unwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the University's education program or activity;

    (3) Sexual Assault. As defined in 20 U.S.C. § 1092(f)(6)(A)(v), Sexual Assault constitutes any sexual act directed against another person, without consent of the person, including instances in which the person is incapable of giving consent. Sexual Assault means an offense classified as a forcible or nonforcible sex offense under the uniform crime reporting system of the Federal Bureau of Investigation (FBI). The following are types of Sexual Assault under the FBI's National Incident-Based Reporting System ("NIBRS") uniform crime reporting system:

        (a) Rape. As defined in NIBRS, Rape is penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, or by a sex-related object. This definition also includes instances in which the victim is incapable of giving consent because of temporary or permanent mental or physical incapacity (including due to the influence of drugs or alcohol) or because of age.

5

Physical resistance is not required on the part of the victim to demonstrate lack of consent.

(b) Criminal Sexual Contact. As defined in NIBRS, Criminal Sexual Contact is the intentional touching of the clothed or unclothed body parts without consent of the victim for the purpose of sexual degradation, sexual gratification, or sexual humiliation. This includes the forced touching by the victim of the actor's clothed or unclothed body parts, without consent of the victim for the purpose of sexual degradation, sexual gratification, or sexual humiliation.

(c) Incest. As defined in NIBRS, Incest is nonforcible sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law.

(d) Statutory Rape. Statutory Rape. As defined in NIBRS, Statutory Rape is nonforcible sexual intercourse with a person who is under the statutory age of consent.

(4) Dating Violence. As defined in 34 U.S.C. § 12291(a)(11), Dating Violence is defined as violence committed by a person (i) who is or has been in a social relationship of a romantic or intimate nature with the other person; and (ii) where existence of such a relationship shall be determined based on a consideration of the following factors: the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.

(5) Domestic Violence. As defined in 34 U.S.C. § 12291(a)(12), Domestic Violence includes crimes of violence committed by a current or former spouse or intimate partner of the person, by an individual with whom the person shares a child in common, by an individual who is cohabitating with or has cohabitated with the person as a spouse or intimate partner, by an individual similarly situated to a spouse of the person under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred, or by any individual against the person who is protected from that individual's acts under the domestic or family violence laws of the jurisdiction in which the crime of violence occurred.

(6) Stalking. As defined in 34 U.S.C. 12291(a)(36), Stalking means engaging in a course of conduct directed at a specific person that would cause a reasonable person to (i) fear for his or her safety or the safety of others; or (ii) suffer substantial emotional distress.

## IV.    POLICY

### A.  REPORTING TITLE IX SEXUAL HARASSMENT

1. **Duty to Report**. AU Community members employed by the University (including student employees, such as teaching assistants, resident assistants, and orientation leaders) and individuals

6

covered by the University's Out-of-State Staffing Policy have a duty to report Title IX Sexual Harassment to the Title IX Coordinator (See Section IV(A)(4) below for contact information), when they become aware of such conduct. AU Community members who have a duty to report Title IX Sexual Harassment may be subject to discipline or corrective action for failing to fulfill this obligation.

2.  **Option to Report**.  AU students who are not employed by the University are highly encouraged to report any Title IX Sexual Harassment of which they become aware to the Title IX Coordinator (See Section IV(A)(4) below for contact information) or to seek support from a Confidential Resource (See Section (A)(3) below for contact information), but they do not have a duty to do so.

3.  **Confidential Support, Medical, and Counseling Resources ("Confidential Resources")**. AU Community members are encouraged to utilize the following resources for confidential discussion and support related to Title IX Sexual Harassment and its effects. Because of the confidentiality afforded to these relationships, however, community members should know that these confidential resource persons are not in a position to report Title IX Sexual Harassment to the Title IX Coordinator or to intervene to end the Title IX Sexual Harassment. To ensure University involvement, AU Community members must report Title IX Sexual Harassment to the Title IX Coordinator, as detailed in this Policy. Confidential Resources include:

    *Student Confidential Resources*

    a.  **Victim Advocates** and all full-time Health Promotion & Advocacy Center staff – Office of Advocacy Services for Interpersonal and Sexual Violence (OASIS), Health Promotion & Advocacy Center; (202) 885-7070; OASIS@american.edu; www.american.edu/ocl/OASIS

    b.  **Professional Counselors –** Counseling Center; (202) 885-3500 (including the satellite location in the Washington College of Law); www.american.edu/ocl/counseling

    c.  **Medical Providers** – Student Health Center; (202) 885-3380; shc@american.edu;

    d.   **Ordained Clergy** – Kay Spiritual Life Center; (202) 885-3320; kslc@american.edu; www.american.edu/ocl/kay

*Faculty/Staff Confidential Resources*

    a)   **Professional Counselors – Faculty and Staff Assistance Program** (FSAP); (202) 885-2593; fsap@american.edu; https://www.american.edu/hr/worklife/fsap.cfm

4. **Reports to Title IX Coordinator.** The duty to report as described in Sections IV(A)(1) and (2) of this Policy may not trigger an institutional response to a report of Title IX Sexual Harassment. The University will only respond to reports of Title IX Sexual Harassment once the University has actual knowledge of the Title IX Sexual Harassment in the University's education program or activity against an AU Community member in the United States. **Therefore, AU Community members who feel that they have been subjected to Title IX Sexual Harassment and are seeking an institutional response to Title IX Sexual Harassment should directly contact the Title IX Coordinator.** The following is the Title IX Coordinator's contact information where reports and Formal Complaints of Title IX Sexual Harassment may be filed:

> **UNIVERSITY TITLE IX COORDINATOR**
>
> **Assistant Vice President for Equity and Title IX Officer**
> **Office of Equity and Title IX**
> **4400 Massachusetts Avenue, NW**
> **Washington, DC 20016**
> **Phone: 202-885-8080**
> **Email: TitleIX@american.edu**

5. **Timeframes for Reporting.** In order to maintain and support a community that is respectful and free from Title IX Sexual Harassment and related misconduct and to maximize the University's ability to respond promptly and effectively, individuals are urged to come forward with reports of Title IX Sexual Harassment as soon as possible. Complainants and other reporting individuals are encouraged to seek assistance and to utilize available resources if they feel that they have been subjected to Title IX Sexual Harassment. The sooner a report is made, the more effectively it can be investigated, e.g. while witnesses are still available, memories are fresh, and documentation may still be available. There is, however, no time limitation for reporting Title IX Sexual Harassment under this Policy. In some cases, e.g., where the individual accused of Title IX Sexual Harassment is no longer affiliated with the University, the University may not be able to take disciplinary action. However, the University will strive to provide other fair and reasonable measures to support the Complainant and minimize any future misconduct.

6. **Initial Response to a Report.** Once the University has actual knowledge of a report of Title IX Sexual Harassment, the Title IX Coordinator or designee will promptly contact the Complainant to discuss the availability of Supportive Measures, consider the Complainant's wishes with respect to Supportive Measures, inform the Complainant of the availability of Supportive Measures with or without filing a Formal Complaint, and explain to the Complainant the process for filing a Formal Complaint.

8

7. **Option to File a Criminal Report.** Simultaneous to pursuing resolution through the University's internal process, the Complainant may also file a criminal report with the Metropolitan Police Department or the appropriate law enforcement agency for any criminal conduct. The University will not delay its grievance process if criminal charges are filed. At the request of law enforcement authorities, however, the University may postpone the University investigation and/or proceedings while the authorities gather evidence.

B.    SUPPORTIVE MEASURES, EMERGENCY REMOVAL & ADMINISTRATIVE LEAVE

1. **Supportive Measures Available to Complainants and Respondents.** Once the University has actual knowledge of a report of Title IX Sexual Harassment, the Title IX Coordinator or designee may provide the Complainant or the Respondent with Supportive Measures. Such measures are designed to restore or preserve equal access to the University's education program or activity without unreasonably burdening the other party, including measures designed to protect the safety of all parties or the University's educational environment, or deter Title IX Sexual Harassment. Supportive Measures may include, but are not limited to: counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escort services, mutual restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures.

2. **Supportive Measures Implementation.** The Title IX Coordinator is responsible for coordinating the effective implementation of Supportive Measures. The Title IX Coordinator or designee has the discretion to continue Supportive Measures for the Complainant or the Respondent even after a determination of non-responsibility.

3. **Confidentiality of Supportive Measures**. The University will maintain as confidential any Supportive Measures provided to the Complainant or the Respondent, to the extent that maintaining such confidentiality would not impair the ability of the University to provide the Supportive Measures.

4. **Emergency Removal of a Respondent.**

   a. The Title IX Coordinator or designee, in consultation with the University's Threat Assessment and Management Team as necessary, retains the right to remove a Respondent from some or all of the University's education program or activity on an emergency basis.

   b. A Respondent may be removed on an emergency basis when, based on an individualized safety and risk analysis, the University determines that an immediate threat to the physical health or safety of any individual arising from the allegations of Title IX Sexual Harassment justifies removal.

   **c.** A Respondent who is removed from the University's education programs and activities will be provided notice and an opportunity to challenge the decision immediately following the removal. The Respondent must submit the challenge in writing, and include any documentation that is supportive of the challenge to the appropriate University official. If the Respondent is a student, then the Dean of Students or designee will render a final decision regarding the challenge to the emergency removal. If the Respondent is a faculty member, then the Deputy Provost or designee will render a final decision on the challenge to the emergency removal. If the Respondent is a staff or related third party, then the Assistant Vice President of Human Resources or designee will render the final decision on the challenge to the emergency removal.

**5.** **<u>Administrative Leave of an Employee/Faculty Respondent</u>.** The Title IX Coordinator or designee, in consultation with other University administrators as necessary, may place a non-student employee Respondent or a faculty Respondent on administrative leave during the pendency of the grievance process. An employee alleged to have committed Title IX Sexual Harassment will not be placed on administrative leave unless and until a Formal Complaint has been filed with the University. The University, in its discretion and based on the circumstances, will determine whether any administrative leave imposed is to be imposed with or without pay or benefits.

## C.      FILING A FORMAL COMPLAINT

**1.** **<u>Formal Complaints Filed by Complainants.</u>** Complainants seeking formal resolution must file a Formal Complaint, as defined by this Policy, with the Title IX Coordinator. A Formal Complaint may be filed with the Title IX Coordinator in person, by mail, or by electronic mail, by using the contact information provided in Section IV (A)(4) of this Policy. The Formal Complaint must contain the Complainant's physical or digital signature, or otherwise indicate that the Complainant is the person filing. A Complainant may file a Formal Complaint at any time while the Complainant is participating in, or attempting to participate in the University's education programs or activities.

**2.**  **<u>Formal Complaints Filed by the Title IX Coordinator.</u>** The Title IX Coordinator has discretion to file a Formal Complaint about reported Title IX Sexual Harassment even if the Complainant chooses not to participate in the process and/or does not wish to file a report. When the Title IX Coordinator has determined that a formal resolution of a report of Title IX Sexual Harassment is warranted, the Title IX Coordinator may file a Formal Complaint, as defined by this Policy. For the purposes of these Formal Complaints, the Title IX Coordinator is not a Complainant or otherwise a party.

3.  **Response to Formal Complaint.**  In response to receiving the Formal Complaint, the University will follow the grievance process as specified in this Policy.  The grievance process presumes that the Respondent is not responsible for the alleged Title IX Sexual Harassment until all of the relevant evidence has been examined and a determination regarding responsibility is made at the conclusion of the grievance process. The grievance process outlined in this Policy will treat Complainants and Respondents equitably by providing remedies to a Complainant where a determination of responsibility for Title IX Sexual Harassment has been made against the Respondent, and by following a grievance process that complies with this Policy before the imposition of any disciplinary sanctions or other actions that are not Supportive Measures against a Respondent.

4.  **Estimated Timeline for Resolution for Title IX Complaints.**  At the initial meeting with the Complainant, the Title IX Coordinator or designee will explain the grievance process that is identified below. The University strives to complete resolution of Formal Complaints within 94 calendar days from when the University has notice of the Formal Complaint. To ensure timely resolution, the grievance process will take place during all times that the University is open, including summer and winter breaks.  However, reasonable adjustments to the timeline of the grievance process may be made for good cause, such as to ensure participation of the parties and/or witnesses, hearing and sanctioning panels cannot be convened, the case is complex, or other comparable situations. Where the estimated timeline cannot be adhered to, the Title IX Coordinator or designee will notify the parties in writing explaining the reason for the delay and providing an anticipated completion date. The 94 calendar day time frame does not include the time needed for the University to process appeals.

## D.    INFORMAL RESOLUTION

1.  **Informal Resolutions Permitted Generally.**  The University encourages, but does not require, informal resolution when possible. The goal of informal resolution is to resolve concerns at the earliest stage possible, with the cooperation of all parties involved. Informal resolution may include inquiry into the facts, but typically does not include a formal investigation.  These informal efforts may include: addressing the Respondent directly; participating in a facilitated meeting with the appropriate University official(s); or participating in mediation. The informal resolution could include, by way of example: separating the parties; referring the parties to counseling; conducting targeted educational and training programs; or providing remedies for the individual(s) harmed by the alleged Title IX Sexual Harassment.  Informal resolution may not be offered to the parties unless a Formal Complaint is filed.

2.  **Informal Resolution Not Available in Certain Circumstances.**  The Title IX Coordinator or designee may elect to bypass the informal procedures because of the severity of the allegation or complexity of the Formal Complaint. Informal resolution is not permitted for Formal Complaints filed by a student Complainant against an employee Respondent, or for any allegations of Sexual Assault, Dating Violence, Domestic Violence, or Stalking.

11

3. **Informal Resolution Requirements.**  At any time prior to reaching a determination regarding responsibility, the University may facilitate an informal resolution provided that:

   a. Written notice is given to the parties that discloses the allegations within the Formal Complaint; the requirements of the informal resolution process, including the circumstances under which it precludes the parties from resuming a Formal Complaint arising from the same allegations, provided, however, that, at any time prior to agreeing to a resolution, any party has the right to withdraw from the informal resolution process and resume the grievance process with respect to the Formal Complaint; and any consequences resulting from participating in the informal resolution process; and

   b. Obtains the parties' voluntary, written consent to the informal resolution process.

4.  **Informal Resolution Voluntary.**  The University will not compel a Complainant or Respondent to engage in any form of informal resolution.  Either party can request to end informal resolution and resume the formal grievance process with respect to the Formal Complaint at any time prior to agreeing to a resolution.

5. **Completion of Informal Resolution.**  If an agreement acceptable to the University, the Complainant, and the Respondent is reached through informal resolution, the terms of the agreement are implemented and the matter is deemed resolved and closed. If an agreement is not reached, and the Title IX Coordinator or designee determines that further action is necessary, or if a Respondent fails to comply with the terms of the informal resolution, the matter may be referred for an investigation and formal resolution. Where the Complainant or the Respondent withdraws from informal resolution, or informal resolution is otherwise terminated for any reason, any statements or disclosures made by the parties during the course of the alternative resolution may be considered in a subsequent investigation and formal resolution. The Title IX Coordinator or designee shall maintain a record of the Formal Complaint and its resolution.

### E.    GRIEVANCE PROCESS: DISMISSAL OF FORMAL COMPLAINT

1. **Mandatory Dismissal of Formal Complaint.**   If the Title IX Coordinator or designee determines that the conduct alleged in the Formal Complaint would not constitute Title IX Sexual Harassment, as defined by this Policy, even if proven; did not occur in a University's education program or activity; or did not occur against a person in the United States, then the Title IX Coordinator or designee must dismiss the Formal Complaint with regard to that conduct.

2. **Referral to Other University Procedures.** In the event that the Title IX Coordinator or designee dismisses a Formal Complaint under Section IV (E)(1) of this Policy, but determines that the

conduct alleged in the Formal Complaint may be in violation of another University policy, then the Title IX Coordinator or designee will refer the conduct alleged in the Formal Complaint to the appropriate University office for resolution under the applicable University process/procedure.

3.   **Permissible Dismissal of Formal Complaint.**  The Title IX Coordinator or designee may dismiss a Formal Complaint or any of the allegations within a Formal Complaint, if, at any time during the grievance process: a Complainant notifies the Title IX Coordinator, in writing, that the Complainant would like to withdraw the Formal Complaint or any allegations in the Formal Complaint; the Respondent is not enrolled or employed by the University; or specific circumstances prevent the University from gathering evidence sufficient to reach a determination as to the Formal Complaint or any allegations in the Formal Complaint.

4.   **Notice and Appeal of Dismissal.**  Upon dismissing a Formal Complaint, or a portion of a Formal Complaint, the Title IX Coordinator or designee will promptly notify both parties, simultaneously and in writing, of the dismissal and explain the reasons of the dismissal.  The decision to dismiss a Formal Complaint may be appealed pursuant to Section IV(K) of this Policy.

## F.     GRIEVANCE PROCESS:  CONSOLIDATION OF FORMAL COMPLAINTS

1.   **Consolidation of Formal Complaints.**  The Title IX Coordinator or designee has the discretion to consolidate multiple Formal Complaints, or allegations related to those complaints, into a single investigation if the allegations arise out of the same facts or circumstances. Consolidation might involve multiple Complainants and a single Respondent, multiple Respondents, or multiple Formal Complaints between the same Complainant and Respondent.

## G.     GRIEVANCE PROCESS:  NOTICE OF ALLEGATIONS

1.   **Notice of Allegations.**  Upon receipt of a Formal Complaint, the Title IX Coordinator or designee will provide written notice to the Complainant and the Respondent who are known. The notice of allegations will include:

   a.  Notice of the University's grievance process described in this Policy, including any informal resolution process;

   b.  Notice of the conduct alleged potentially constituting Title IX Sexual Harassment, including sufficient details known at the time and with sufficient time to prepare a response before any initial interview.  Sufficient details include the identities of the parties, if known, the conduct allegedly constituting Title IX Sexual Harassment, and the date and location of the alleged incident;

13

c.  A statement that the Respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility is made at the conclusion of the grievance process;

d.  Information that each party may have an advisor of their choice, who may be an attorney as described in Section IV(H)(5) of this Policy;

e.  Information that the parties will be given equal opportunities to inspect and review evidence as described in Section V(H)(10) of this Policy;

f.  Information of any applicable University policies that prohibit knowingly making false statements or knowingly submitting false information during the grievance process; and

g.  The University's prohibition against retaliation.

2.  **Supplemental Notice of Allegations.**  If, during the course of the investigation, there are additional allegations of Title IX Sexual Harassment not included in the original notice of allegations, each party will receive an updated written notice with the additional allegations.

### H.    GRIEVANCE PROCESS:  INVESTIGATION

1.  **Equitable Opportunities**.   During the formal resolution proceedings, both the Complainant and the Respondent are provided equitable opportunities, including the opportunity to participate in the investigation; to review and present information and evidence; to be accompanied by an advisor of their choice to any meeting and proceeding; and to timely notice of meetings at which their presence will be requested or required.

2.  **Request for Disability Accommodations.**  A party may contact the Title IX Coordinator to request an accommodation for a disability to participate in the grievance process.  A request for an accommodation will be reviewed by the appropriate University office that handles accommodation requests and evaluated pursuant to the applicable office's reasonable accommodation procedures.  Generally, a party should make a request promptly and in advance of when the accommodation is needed to allow a reasonable amount of time to review the request.  However, a response to an immediate need for accommodation will be considered to the fullest extent possible.

3.  **Investigator.**  A University Investigator will conduct a prompt, thorough, fair and impartial investigation. The Investigator will receive annual training on: (1) issues of relevance; (2) the definitions in the Policy of Title IX Sexual Harassment; (3) the scope of the University's education program or activity; (4) how to conduct an investigation; and (5) how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias. The Investigator will be impartial and free from conflict of interest or actual bias for or against the Complainant or the Respondent or Complainants or Respondents generally.

14

4. **Conflict of Interest Challenge.** The Complainant and the Respondent may challenge the Investigator on the grounds of a conflict of interest or bias for or against Complainants or Respondents generally, or an individual Complainant or Respondent. This challenge must be raised, in writing, providing the specific grounds of the alleged conflict of interest or bias to the Title IX Coordinator or designee within forty-eight (48) hours of receipt of the notice of allegations. The Title IX Coordinator or designee, at their sole discretion, may disqualify the Investigator.

5. **Advisors.** The Complainant and the Respondent may be accompanied by an advisor of their choice during any meeting or proceeding related to the Formal Complaint. An advisor of choice is not limited to American University students, faculty, or staff, and may be any individual chosen by the party, including, but not limited to, a friend, mentor, family member, and/or attorney. The role of an advisor is limited to consultation. Other than at a live hearing for the sole purpose of conducting any cross-examination (see Section IV(I)(18) of this Policy), an advisor may not speak on behalf of a party or otherwise participate in, or in any manner delay, disrupt or interfere with meetings and/or proceedings. The University will not unduly delay the scheduling of meetings or proceedings based on an advisor's unavailability. An advisor may be asked to meet with the Title IX Coordinator or designee, or another University administrator, in advance of any proceedings to understand the expectations of the role, privacy considerations, and appropriate decorum.

6. **AU Community Cooperation.** The University expects all members of the AU Community to cooperate fully with the University's grievance process for resolving a Formal Complaint. It is understood that there may be circumstances in which Complainants or Respondents wish to limit their participation, and the University will respect the choice of Complainants and Respondents as to how to engage in proceedings under this Policy. The University may, however, move forward with an investigation and disciplinary action without the participation of a party or parties.

7. **Gathering Evidence.** The Investigator will have the burden of proof, and the burden of gathering evidence sufficient to reach a determination of regarding responsibility. The Investigator will review all information gathered or provided by the parties and will determine the appropriateness, relevance and probative value of the information developed or received during the investigation.

   a. **Medical Records.** The Investigator cannot access, consider, disclose, or otherwise use a party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's capacity, or assisting in that capacity, and which are made and maintained in connection with the treatment of the party, unless the Investigator obtains that party's voluntary, written consent to do so for the grievance process.

15

b.  **Legally Recognized Privileged Records.**  The Investigator cannot require, allow, rely upon, or otherwise use questions or evidence that constitute, or seek disclosure of, information protected under a legally recognized privilege, unless the person holding such privilege has waived that privilege, in writing, for the grievance process.

8.  **Equal Opportunity to Present Evidence.**  During the investigation, the parties will be given equal opportunities to be heard, to present relevant inculpatory and exculpatory evidence, and to identify relevant fact and expert witnesses.  The Complainant and the Respondent will not be restricted from discussing the allegations under investigation or to gather and present relevant evidence.  The parties are encouraged to provide all relevant information as promptly as possible to facilitate prompt resolution, and are encouraged to preserve relevant evidence.  In the event that a party declines to voluntarily provide material information, the University's ability to conduct a prompt, thorough and equitable investigation may be impacted.

9.  **Notice of Participation.**  The Investigator will notify and seek to meet separately with the Complainant, the Respondent, and any third-party witnesses, and will gather relevant evidence and information. Prior to meeting with the Respondent and/or the Complainant, the Investigator will provide each party with written notice of the date, time, location, participants, and purpose of any meeting or investigative interview, with sufficient time for the party to prepare to participate.

10. **Review of Preliminary Investigative Report and Evidence.**  Prior to the completion the final investigative report, the Complainant and the Respondent will have an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in the Formal Complaint, including evidence upon which the University does not intend to rely in reaching a determination regarding responsibility, and inculpatory or exculpatory evidence whether obtained from a party or other source.  Specifically, the Investigator will send to each party and the party's advisor, if any, the evidence in either an electronic format or a hard copy as determined by the Investigator, and the parties will have ten (10) calendar days to submit a written response, which the investigator will consider prior to the completion of the investigative report.  Specifically, each party will have ten (10) calendar days to:  (1) provide written comment or feedback; (2) submit additional information; (3) identify additional witnesses; and/or (4) request the collection of other information by the Investigator. The Investigator will determine the appropriateness of additional investigative steps and the relevance of additional information. If either party provides a written response to the Investigator, or makes a request for additional investigation, that written response and any additional information gathered by the Investigator will be shared with the other party, and incorporated as appropriate into the final investigative report. Any information gathered through additional investigation steps will be shared with both parties, and, as appropriate, each party will have the opportunity for further response. Each party will have three (3) calendar days to review any additional substantive information.  The Investigator will make all evidence subject to the

16

parties' inspection and review available at any hearing to give each party equal opportunity to refer to such evidence during the hearing, including for purposes of cross-examination.

11. **Final Investigative Report.** Unless there are significant additional investigative steps requested by the parties or identified by the Investigator, normally within five (5) calendar days after receipt and consideration of additional comments, questions, and/or information from the parties, the Investigator will prepare a final investigative report that fairly summarizes the relevant evidence. At least ten (10) calendar days prior to a hearing, the Investigator will send the final investigative report to each party and each party's advisor, if any, for their review and written response. Both parties will receive simultaneous written notification of the availability of the final investigative report.

12. **Estimated Timeline for Investigation.** The Investigator will provide periodic updates to the parties about the status of the investigation, with a goal to complete the investigation within approximately 69 calendar days after the receipt of the Formal Complaint.

## I.    GRIEVANCE PROCESS:  LIVE HEARING

1. **Facilitation of the Hearing.** The Investigator will submit a copy of the investigative report to the Title IX Coordinator or designee to facilitate the coordination of a Hearing Panel to conduct a live hearing to make a determination regarding responsibility. The live hearing will ordinarily be scheduled within ten (10) calendar days of providing the final investigative report to the parties.

2. **Rules of Decorum.** All parties, advisors and witnesses must maintain appropriate decorum throughout the live hearing. Participants at the live hearing are expected to abide by the Hearing Panel Chair's directions and determinations, maintain civility, and avoid outbursts, raised voices, and other disruptive behavior. Repeated violations of appropriate decorum will result in a break in the live hearing, the length of which will be determined by the Hearing Panel Chair. The Hearing Panel Chair reserves the right to appoint a different advisor to conduct cross-examination on behalf of a party after an advisor's repeated violations of appropriate decorum or other rules related to the conduct of the live hearing.

3. **Advisors.** Both parties must be accompanied by an advisor at the hearing. If one or both of the parties do not have an advisor for the hearing, the University will provide an advisor for that party. Each party's advisor must conduct any cross-examination of the other party and any witnesses as described in Section IV(I)(19) of this Policy. Apart from conducting cross-examination, an advisor's participation is limited to consultation as described in Section IV (H)(5) of this Policy. If a party does not have an advisor present at the live hearing, the University will provide, without fee or charge to that party, an advisor to conduct cross-examination on behalf of that party.

17

4. **Access to Evidence.**  The Complainant and the Respondent will be given equal opportunities to reasonably access the final investigative report and the evidence prior to and during the hearing.

5. **Participation of the Parties and Witnesses.** A party or witness who elects to participate in the process is expected, although not compelled, to participate in all aspects of the process (e.g., a witness who chooses to participate in the investigation is expected to make themselves available for a hearing if requested to do so). The Hearing Panel will never draw any inferences based solely on a party's or witness's absence or refusal to answer questions.

   If a party does not appear for the hearing, their advisor may still appear for the purpose of asking questions of the other party and witnesses.  If a non-participating party's selected advisor also does not appear for the hearing, the University will appoint an advisor to participate in the hearing for the purpose of asking questions of the other party on behalf of the non-participating party.

6. **Hearing Panel.**  The Title IX Coordinator or designee will select a Hearing Panel comprised of three (3) faculty and staff members.  The Hearing Panel must be impartial and free from bias or conflict of interest.  If a member of the Hearing Panel has a concern that they cannot conduct a fair or unbiased review, they may report those concerns directly to the Title IX Coordinator or designee and a different Hearing Panelist will be assigned.  The members of the Hearing Panel will receive annual training regarding the University's policies and procedures; the handling of Title IX Sexual Harassment cases; how to conduct a hearing; issues of relevance, including when questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant; how to serve impartially by, among other things, avoiding prejudgment of the facts at issue, conflicts of interest, and bias; and other relevant issues. The Hearing Panel members will also be trained on any technology that might be used during a hearing.

7. **Hearing Panel Chair.**  The Hearing Panel will select one member to be to the Hearing Panel Chair.  The Hearing Panel Chair will exercise control over the proceedings to avoid needless consumption of time, and to achieve orderly completion of the hearing. Any person, including either party or the party's advisors, who disrupts a hearing may be excluded by the Hearing Panel Chair for cause.  The Hearing Panel Chair is responsible for final decisions on all procedural issues, to exclude questions due to relevancy, and to ensure a fair and expedient administration of the hearing.

8. **Conflict of Interest Challenge.**  The Complainant and the Respondent will be informed of the identities of the members of the Hearing Panel at least forty-eight (48) hours before the hearing. The Complainant and the Respondent may challenge a member of the Hearing Panel on the grounds of conflicts of interest or bias for or against complainants or respondents generally or an individual complainant or respondent. This challenge must be raised, in writing, providing the

18

specific grounds of the alleged conflict of interest or bias to the Title IX Coordinator or designee. The Title IX Coordinator or designee will assess the challenge and determine, in their sole discretion, whether a different Hearing Panel member should be assigned.

9. **Notice of Hearing.**  The Title IX Coordinator or designee will provide both parties at least ten (10) calendar days advance written notice of the hearing for the parties to prepare to participate. The written notice will provide the date, time, location, participants, and purpose of the hearing.

10. **Closed Hearing.**  All hearings are closed to the public.

11. **Hearing Recordings.**  Except as described in this Section, all recordings of the hearing are prohibited.  Any cameras and any recording device, including cellphone, are prohibited. However, the University will audio record the hearing for the purpose of review and appeal. The University does not provide copies of the hearing recording.  The Office of Equity and Title IX will make an audio recording of the hearing to be made available to the parties for review.

12. **Standard of Evidence.**  Determinations of responsibility with respect to the allegations in the Formal Complaint against the Respondent must be established by a Preponderance of the Evidence.

13. **Hearing Format.**  The hearing will be live, with all questioning conducted in real time. The University provides, by request, modifications to the hearing to mitigate harm through contact by the parties. This means that the parties may be located in separate rooms (or at separate locations) with technology enabling the Hearing Panel and the parties to simultaneously see and hear the party or witness answering questions. A hearing may be conducted entirely virtually through the use of remote technology so long as the parties and Hearing Panel are able to hear and see one another in real time.

14. **Hearing Procedure.** The Hearing Panel Chair has general authority and wide discretion over the conduct of the hearing (e.g., they may set time frames for witness testimony and may limit opening/closing statements or their length, etc.).  Although the Hearing Panel Chair has discretion to modify it, the general course of procedure for a hearing is as follows:

    • Questioning of the Complainant by the Hearing Officer;
    • Cross-examination of the Complainant by the Respondent's advisor;
    • Questioning of the Respondent by the Hearing Officer;
    • Cross-examination of the Respondent by the Complainant's advisor;
    • Hearing Officer questioning of other material witnesses (if applicable);
    • Cross-examination of other material witnesses by the parties' advisors;
    • Closing comments from the Complainant; and,
    • Closing comments from the Respondent.

15. **No Formal Rules of Evidence.**  Formal rules of evidence will not be applicable in the hearing. The Hearing Panel Chair may exclude evidence that is not relevant.  The Hearing Panel Chair may, at its discretion, exclude witnesses or any witness testimony that the Hearing Panel considers irrelevant or duplicative.

16. **General Relevancy.**  Only relevant cross-examination and other questions may be asked of a party or witness.  Before the Complainant, the Respondent, or any witness answers a cross-examination or other question, the Hearing Panel Chair must determine whether the question is relevant, and explain any decision to exclude a question as not relevant.

17. **Optional Submission of Questions.**  The parties have the option of providing the Hearing Panel Chair a proposed list of questions to be asked of the other party and witnesses.  Providing an advance list of questions allows the Hearing Panel Chair to evaluate relevancy before the hearing which in turn will facilitate a smooth functioning of the hearing.

18. **Questions Related to Sexual Predisposition or Prior Sexual Behavior.**  Questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant, unless such questions and evidence about the Complainant's prior sexual behavior are offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant, or if the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and are offered to prove consent.

19. **Advisor Cross-Examination.**  During the hearing, the Hearing Panel must permit each party's advisor to ask the other party and any witnesses all relevant questions and follow-up questions, including those questions challenging credibility.  Such cross-examination must be conducted directly, orally, and in real time by the party's advisor and never by a party personally.  The advisor at the live hearing does not represent a party, rather the advisor relays the party's cross-examination questions that the party wishes to have asked. Each party will prepare their questions, including any follow-up questions, for the other party and witnesses, and will provide them to their advisor. The advisor will ask the question as the party has provided them and may not ask questions that the advisor themselves have developed without their party.

20. **Determination of Responsibility.** Following the hearing, the Hearing Panel will consider all of the evidence and make a determination, by a Preponderance of the Evidence, whether the Respondent has violated the Policy.

21. **Written Determination.**  The Hearing Panel will issue a written determination regarding responsibility.  The written determination will include:

    a.  Identification of the allegations potentially constituting Title IX Sexual Harassment;

    b.  A description of the procedural steps taken from the receipt of the Formal Complaint of Title IX Sexual Harassment through the determination, including any notifications to the parties, interviews with parties and witnesses, site visits, methods used to gather other evidence, and hearings held;

    c.  Findings of fact support the determination;

    d.  Conclusions regarding the application of Title IX Sexual Harassment Policy to the facts;

20

e. A statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility;

f. Information on the University's sanctioning process if there is a finding of responsibility; and

g. The University's procedures and permissible bases for the Complainant and Respondent to appeal.

22. **Simultaneous Notice**.  The Hearing Panel will normally make a determination of responsibility within five (5) calendar days after the conclusion of the hearing.  If the Hearing Panel finds that there is insufficient evidence, by a Preponderance of the Evidence, to support a finding of responsibility of all the allegations, then the Hearing Panel will provide the written determination to the parties simultaneously..  If the Hearing Panel finds the Respondent responsible, by a Preponderance of the Evidence, for one or more of the allegations, then the written determination will be simultaneously provided at the conclusion of the sanctioning process as described in Section IV (J)(9) of this Policy.

23. **Appeal Option.**  If the Hearing Panel finds that there is insufficient evidence, by a Preponderance of the Evidence, to support a finding of responsibility of all the allegations, the findings may be appealed pursuant to Section IV (K) of this Policy.

24. **Sanctions Referral.**  If the Hearing Panel finds the Respondent responsible, by a Preponderance of the Evidence, for one or more of the allegations, the case will be referred to the University's sanctioning process as described in Section IV (J) of this Policy for appropriate remedies and sanctions.  Remedies provided to the Complainant are designed to restore or preserve equal access to the University's education program or activity, and sanctions imposed on the Respondent may be disciplinary or punitive in nature.

25. **Estimated Timeline for Live Hearing.**  The University's goal is to complete the live hearing within approximately 13 calendar days after the parties received the final investigative report.

### J.    GRIEVANCE PROCESS:  SANCTIONS

1. **Facilitation of the Sanctions.** The Hearing Panel will submit a copy of the written determination to the Title IX Coordinator or designee to facilitate a Sanctioning Panel.  The Title IX Coordinator or designee will decide which Sanctioning Panel and appeal process applies in cases where the Respondent is both a student and employee or is both a faculty member and staff member.

2. **Sanctioning Panel.**  The Title IX Coordinator or designee or designee will select a Sanctioning Panel comprised of three (3) members.  The composition of the Sanctioning Panel will depend on the status of the Respondent.  If the Respondent is a student, then the Sanctioning Panel will

be comprised of will be comprised of three (3) members of the Student Conduct Council (one (1) student and two (2) faculty/staff members). If the Respondent is a faculty member, then the Sanctioning Panel will be comprised of three (3) members of the Faculty Hearing Committee. If the Respondent is a staff member or related third party, then the Sanctioning Panel will be comprised of three (3) members of the Staff Personnel Review Board. The Sanctioning Panel must be impartial and free from bias or conflict of interest. If a member of the Sanctioning Panel has a concern that they cannot conduct a fair or unbiased review, they may report those concerns directly to the Title IX Coordinator or designee and a different Sanctioning Panelist will be assigned.

3. **Notice of Sanctioning Panel's Deliberation Date.** The Title IX Coordinator or designee will provide both parties at least five (5) calendar days advance notice of the Sanctioning Panel's deliberation date.

4. **Conflict of Interest Challenge.** The Complainant and the Respondent will be informed of the identities of the members of the Sanctioning Panel at least forty-eight (48) hours before the hearing. The Complainant and the Respondent may challenge a member(s) of the Sanctioning Panel on the grounds of conflict of interest or bias for or against complainants or respondents generally, or an individual Complainant or Respondent. The Title IX Coordinator or designee will assess the challenge and determine, in their sole discretion, whether a different Sanctioning Panel member should be assigned.

5. **Sanctioning Panel Recording.** The University will make audio recordings of the Sanctioning Panels, not including the Sanctioning Panel's deliberations, for the purpose of review and appeals. The University does not provide copies of recordings from Sanctioning Panels. The parties may request to listen to the recording, following the proceeding, in the Office of Equity and Title IX.

6. **Sanctioning Panel's Review.** The Sanctioning Panel will review the Hearing Panel's written determination letter and determine the appropriate sanction(s). The Complainant may submit a written statement to the Sanctioning Panel, describing the impact of the Title IX Sexual Harassment on the Complainant, and expressing a preference about the sanction(s) to be imposed. The Respondent may submit a written statement explaining any factors that the Respondent believes should mitigate or otherwise be considered in determining the sanction(s) to be imposed.

7. **Submitted Statements.** The Complainant and the Respondent may provide their statements orally or they may be submitted into the record for consideration by the Sanctioning Panel. Should both parties attend the Sanctioning Panel, each party will provide their statements separately to the Sanctioning Panel. The Sanctioning Panel may ask questions of both parties in order to determine information relevant to a sanction recommendation.

8. **Sanctioning Panel's Deliberation.** The Sanctioning Panel will deliberate on appropriate sanctions. The Complainant, the Respondent, and advisors are excluded from the Sanctioning Panel's deliberations. The sanctions determined by the Sanctioning Panel are recommendations to the appropriate university administrator. If the Respondent is a student, then the Dean of Students or designee will render a final decision regarding sanctions. If the Respondent is a faculty member, then the Deputy Provost or designee will render a final decision on sanctions. If

22

the Respondent is a staff or related third party, then the Assistant Vice President of Human Resources or designee will render the final decision on sanctions. The recommendation of sanction(s) to the appropriate University administrator will be made by majority vote of the Sanctioning Panel.

In determining the appropriate sanction(s) and/or remedies, the following factors may be considered:

- the nature of the conduct at issue;
- the impact of the conduct on the Complainant;
- the impact or implications of the conduct on the University community;
- prior misconduct by the Respondent, including the Respondent's relevant prior discipline story, both at the University or elsewhere, and any criminal convictions, if such information is available and known;
- any expression of remorse or acceptance of responsibility by a Respondent;
- maintenance of a safe and respectful environment conducive to learning;
- protection of the university community;
- the necessity of any specific action in order to eliminate the Title IX Sexual Harassment, prevent its recurrence and remedy its effects on the Complainant or other University community members; and,
- any mitigating, aggravating or compelling circumstances in order to reach a just and appropriate resolution in each case.

The Sanctioning Panel may also consider restorative outcomes that, taking into account the safety of the AU Community as a whole, allow a Respondent to develop insight into the causes of the prohibited conduct, learn about the impact of the behavior on the Complainant and the community, and identify how to prevent or change the behavior. Sanctions may be issued individually, or a combination of sanctions may be imposed.

9. **Sanction Outcome Letter.** The appropriate University administrator or designee will normally provide both parties, simultaneously and in writing, a sanction outcome letter within five (5) calendar days after the conclusion of the Sanctioning Panel's deliberation. The sanction outcome letter will include:

    **a.** A copy of the written determination letter; and

    **b.** Disciplinary sanctions imposed on the Respondent, and

    **c.** Whether remedies designed to restore or preserve equal access to the University's education program or activity will be provided to the Complainant; and

    **d.** Information on the University appeal process.

10. **Range of Sanctions.** If the Respondent is a student, then the range of sanctions may include, but is not limited to, sanctions contained in Section XIX of the Student Conduct Code. Student

sanctions may include, but are not limited to:  censure, educational actions, remedial, disciplinary probation, removal from University housing, suspension, or dismissal.  If the Respondent is a faculty member, then the range of sanctions may include, but is not limited to, sanctions contained in Section 22 of the Faculty Manual.  Faculty sanctions may include, but are not limited to:  minor sanctions, which include any adverse employment action short of suspension, such as a reprimand, or major sanctions, which include suspension or dismissal from employment.  If the Respondent is a staff member, then the range of sanctions may include, but is not limited to, sanctions contained in Section 7 of the Staff Manual.  Staff sanctions may include, but are not limited to:  a warning, reprimand, temporary suspension without pay, or termination from employment.  In cases where the Respondent is both a student and employee or is both a faculty member and staff member, then the range of sanctions can be a combination of sanctions based on the Respondent's multiple statuses.

11. **Estimated Timeline for Written Sanction Outcome.**  The University's goal is to complete the sanction process within approximately 12 calendar days after the written determination of responsibility is sent to the parties.

### K.    GRIEVANCE PROCESS:  APPEALS

1. **Appeal Option.**  The dismissal of a Formal Complaint or an allegation contained therein; a determination of responsibility; and/or the sanction(s) imposed may be appealed by either the Complainant or the Respondent in keeping with the procedures in this Section of the Policy. The dismissal of a Formal Complaint, determination regarding responsibility and/or imposition of sanctions will be deferred while an appeal is pending.

2. **Written Appeal.**  The Complainant and the Respondent may appeal the dismissal, determination of responsibility, and/or the sanctions. Appeals must be submitted, in writing, to the appropriate university administrator, as defined in Section IV (K)(5), within seven (7) calendar days after the notice of the case outcome.

3. **Other Party's Opportunity to Respond to Appeal**.  Should an appeal be submitted by the Complainant or the Respondent, the other party shall be notified, in writing, when that appeal is filed and given an opportunity to respond within seven (7) calendar days of notification that an appeal has been submitted.

4. **Conflict of interest Challenge**. The Complainant and the Respondent may challenge the participation of the appropriate university administrator on the grounds of conflict of interest or bias for or against complainants or respondents generally, or an individual Complainant or Respondent. This challenge must be raised, in writing, providing the specific grounds of the alleged conflict of interest or bias to the Title IX Coordinator or designee within forty-eight (48) hours after the notice of the case outcome. The Title IX Coordinator or designee may disqualify, in their sole discretion, and replace the appropriate university administrator.

24

5. **Appeal Review.**  Appeals will be reviewed by the appropriate university administrator.  If the Respondent is a student, then the Vice President of Campus Life or designee will review the appeal. If the Respondent is a faculty member, then the Provost or designee will review the appeal. If the Respondent is a staff or related third party, then the Vice President of People and External Affairs or designee will review the appeal.

6. **Grounds for Appeal.**  The dismissal of an allegation or the Formal Complaint; the determination of responsibility; and/or the sanction(s) imposed may be appealed on the following limited bases:

   a. Procedural irregularity that affected the outcome of the matter;

   b. New evidence that was not reasonably available at the time the determination regarding the responsibility or dismissal was made, that could affect the outcome of the matter;

   c. The Title IX Coordinator, Investigator, or decision-makers had a conflict of interest or bias for or against complaints or respondents generally, or the individual Complainant or Respondent that affected the outcome of the matter; or

   d. Insufficient/excessive sanctions.

7. **Appeal Decision.**  Appeals will be decided based on a review of the underlying record of the investigation and hearing, the appealing party's written appeal statement, any response to that statement by the other party. All written materials considered by the appropriate university administrator will be subject to inspection by the appealing party/parties.  The appropriate university administrator or designee may affirm or modify the findings and sanctions or may remand the case for further consideration.  Decisions rendered by the appropriate university administrator or designee are final.

8. **Written Appeal Outcome.**  The appropriate university administrator or designee will normally provide both parties, simultaneously and in writing, an appeal outcome letter, describing the result of the appeal and the rationale for the result within five (5) calendar days after the other party's opportunity to respond to the appeal has expired or the other party provides a written response to the appeal, whichever event occurs first.

9. **Estimated Timeline for Appeal.**  The University's goal is to complete the appeal within approximately 21 calendar days after the receipt of the written appeal.

   **L.    TRAINING**

1. **Training in General.**  The Title IX Coordinator, Investigators, Hearing Panel members, Sanctioning Panels members, university administrators rendering decisions on sanctions and appeal, and any person who facilitates an informal resolution process will receive training on Title IX Sexual Harassment, the scope of the University's education program or activity, how to conduct an investigation and grievance process including hearings, appeals, and informal

25

resolution processes, as applicable, and how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias.

2. **Training on Technology.**  Hearing Panel members will receive training on any technology to be used at a live hearing and on issues of relevance of questions and evidence, including when questions and evidence about the Complainant's sexual predisposition or prior sexual behavior are not relevant.

3. **Training on Investigation Reports.**  Investigators will receive training on issues of relevance to create an investigative report that fairly summarizes relevant evidence.

4. **Training Materials.**  Materials used to train Title IX Coordinators, Investigators, Hearing Panel members, Sanctioning Panels members, university administrators rendering decisions on sanctions and appeal, and any person who facilitates an informal resolution process will not rely on sex stereotypes and will promote impartial investigation and adjudications of Formal Complaints.  The University will make these training materials publicly available on its website.

## M.    RECORDS

1. **Record Maintenance.**  The following records will be maintained by the Office of Equity and Title IX for a period seven (7) years:

    a.  Title IX Sexual Harassment investigation records including any determination regarding responsibility, any audio recordings of hearings, any disciplinary sanctions imposed on the Respondent, and any remedies provided to restore or preserve equal access to the University's education program or activity;

    b.  Any appeal and result from a Title IX Sexual Harassment investigation;

    c.  Any informal resolution and the result from a Title IX Sexual Harassment investigation;

    d.  All training material as described in Section IV (L) of this Policy; and

    e.  Any actions, including any Supportive Measures, taken in response to a Formal Complaint.

2. **Personnel or Disciplinary Records.**  Formal Complaints against faculty, staff, or students that result in a personnel or disciplinary action will also be a part of the Respondent's personnel or disciplinary record.

## N.    FALSE OR FRIVOLOUS CHARGES

 The University encourages good faith reporting of violations of this Policy. This Policy shall not be used to bring false or frivolous charges against students, faculty, or staff. Those bringing such charges may be subject to disciplinary action. Failure to prove a complaint, does not itself constitute a false or frivolous complaint.

### O.    CONFIDENTIALITY & THE UNIVERSITY'S OBLIGATION TO RESPOND TO REPORTS

1.  **Confidentiality.** The University will maintain the confidentiality of information shared throughout the grievance process.  However, disclosures may be required for the purpose of fact-finding or efforts to resolve the Formal Complaint.  In the limited instances where disclosures must be made by the University, disclosures will be limited to those persons necessary to proceed in the fact-finding process or to otherwise address the grievance.  All persons involved in the grievance will be advised of the importance of confidentiality throughout the process.  While the University is committed to respecting the confidentiality of all parties involved in the process, it cannot guarantee complete confidentiality. Examples of situations in which confidentiality cannot be maintained include:

    • When the University is required by law to disclose information (such as in response to a subpoena or court order).
    • When disclosure of information is determined by the Title IX Coordinator or designee to be necessary for conducting an effective investigation of the report of Title IX Sexual Harassment.
    • When confidentiality concerns are outweighed by the University's interest in protecting the safety or rights of others.
    • When a Formal Complaint is filed.

2.  **Confidentiality and University's Limitations in Responding.** In some cases, Complainants may request that their names be kept confidential and that the University take no action on their report of Title IX Sexual Harassment ("confidential reporting"). The Title IX Coordinator or designee will evaluate each request and advise the Complainant that "confidential reporting" will limit the University's ability to respond fully to the matter, including pursuing disciplinary action against the Respondent.  Nevertheless, in most instances, the University will honor such confidentiality requests unless to do so would impede its ability to provide a safe and nondiscriminatory environment for the AU Community.

### V.    EFFECTIVE DATE AND REVISIONS

This Policy was last revised December 17, 2025.

27