# EXHIBIT C



**WRITTEN DETERMINATION:**  **ROE**  **DOE**

| Date of Written Determination: | November 14, 2023 |
|---|---|
| Complainant: | **ROE** <br> Status: Undergraduate Student |
| Respondent: | **DOE** <br> Status: Undergraduate Student |

**Hearing Panelists**: John O'Malley (Chair), Katerina Kulagina, Seth Mancini

## I.     ALLEGATIONS

On February 21, 2023, the Office of Equity & Title IX initiated an investigation into a complaint alleging that **DOE** subjected **ROE** to sexual assault (rape). Specifically, on December 7, 2021, **ROE** alleges that while she and **DOE** were in her on-campus dormitory in Letts Hall, he penetrated her vagina with his fingers and penis without her consent and that she was unable to consent due to incapacitation from marijuana consumption.

## II. PROCEDURAL STEPS

1/30/2023: Notice of Allegations was issued by the Office of Equity and Title IX, identifying **DOE** as the complainant and **ROE** as the respondent.

2/21/2023: Notice of Allegations was issued by the Office of Equity and Title IX identifying **ROE** as the complainant and **DOE** as the respondent. One investigation was completed into the allegations of both parties as the allegations arose out of the same facts or circumstances.

2/22/2023: **DOE** met via Microsoft Teams for an investigatory interview.

3/8/2023: **DOE** met via Microsoft Teams for an investigatory interview.

3/13/2023: **DOE** met via Microsoft Teams for an investigatory interview.

3/20/2023: **ROE** met via Microsoft Teams for an investigatory interview.

3/29/2023: **S-1** met via Microsoft Teams for an investigatory interview.

3/30/2023: **S-2** met via Microsoft Teams for an investigatory interview.

3/30/2023: **S-3** met via Microsoft Teams for an investigatory interview.

3/31/2023: **ROE** met via Microsoft Teams for an investigatory interview.

4/3/2023: **S-4** met via Microsoft Teams for an investigatory interview.

4/4/2023: **S-5** met via Microsoft Teams for an investigatory interview.

4/5/2023: **S-6** met via Microsoft Teams for an investigatory interview.

4/6/2023: **S-8** met via Microsoft Teams for an investigatory interview.

4/6/2023: **S-9** met via Microsoft Teams for an investigatory interview.

4/6/2023: **S-7** met via Microsoft Teams for an investigatory interview.

4/17/2023: **ROE** met via Microsoft Teams for an investigatory interview.

4/18/2023: **S-13** met via Microsoft Teams but declined an investigatory interview.

4/19/2023: **DOE** met via Microsoft Teams for an investigatory interview.

4/26/2023: **DOE** met via Microsoft Teams for an investigatory interview.

WRITTEN DETERMINATION:    **ROE   DOE**

5/11/2023 – 5/15/2023: Witness Review Period
5/22/2023 – 5/26/2023:    **S-13**        Review Period1.
6/2/2023 -       **S-13**        met via Microsoft Teams to make real-time edits to his statement.
7/10/2023 – 7/19/2023: Preliminary Case Review Period.
8/17/2023 – Final Investigative Report Issued
10/25/2023 – Live Hearing.  In addition to the parties and their advisors and the panelists, the following witnesses appeared at the live hearing:    **S-2**    ,    **S-1**    ,    **S-7**        ,    **S-5**    ,    **S-4**    ,    **S-6**    .                                                                                                 s-

**Contact Attempts**
    **S-13**        verbally declined to participate in the investigation during a Microsoft Teams meeting on April 18, 2023.

**Review of Witness Statements**
The investigator sent each witness a summary of their interview and requested they review the summary. **S-1** , **S-3** , **S-2** , **S-5** , and **S-6** responded with feedback. **S-9**   **S-7** , and **S-8** did not respond to the investigator's email. Prior to reviewing his statement,       **S-13**        requested that his witness statement be rescinded because he did not believe he recalled the events pertaining to this investigation accurately;       **S-13**        ultimately provided his edits to the document during a Microsoft Teams meeting.

## III. FINDINGS OF FACT SUPPORTING THE DETERMINATION

The hearing panel finds the following:

- The statements made by **DOE** to third parties where he accused **ROE** of raping him were not credible.
- **ROE** gave consistent statements regarding the events of December 7, 2021, and were credible.
- The audio recordings made by **ROE** were not made under duress and the statements made by **DOE** on those recordings were credible.
- **DOE** gave conflicting accounts of the events on December 7, 2021.  The statements made by **DOE** to **ROE** and other third parties contained in the report where he admitted that he lied about his version of the events on December 7, 2021, were credible.
- **DOE** admitted to being a rapist, acknowledged that **ROE** was high when he penetrated **ROE** vagina with his fingers and penis on December 7, 2021, and apologized for his conduct.
- **DOE** acknowledged that he witnessed **ROE** ingest THC with her dab pen prior to having sex, and **DOE** later admitted that **ROE** was high when **DOE** and **ROE** had sex.
- **ROE** was under the influence of THC on December 7, 2021.
- **ROE** was mentally and physically impaired and was in a state of intermittent consciousness when **DOE** penetrated **ROE** vagina with his fingers and penis.
- **DOE** was not intoxicated or incapacitated on December 7, 2021, when he penetrated **ROE** vagina with his fingers and penis..

## IV. CONCLUSIONS REGARDING THE APPLICATION OF TITLE SEXUAL HARASSMENT TO THE FACTS

The Hearing Panel finds that based on the information provided through both the investigative report and the hearing, the preponderance of the evidence supports the conclusion that    **DOE**    is **RESPONSIBLE**

WRITTEN DETERMINATION:   **ROE   DOE**

for violating the University's Title IX Sexual Harassment Policy by engaging in the prohibited conduct of sexual assault (rape).

## V. RATIONALE AND DETERMINATION OF RESPONSIBILITY

The University's Title IX Sexual Harassment Policy [2020-2021] provides the following relevant definitions, which are identical to the definitions found in the Title IX Sexual Harassment Policy effective August 14, 2020:

> **Sexual Assault** - As defined in 20 U.S.C. § 1092(f)(6)(A)(v), Sexual Assault constitutes any sexual act directed against another person, without consent of the person, including instances in which the person is incapable of giving consent.
>
> The following is a type of sexual assault:
>
> > **Rape**. As defined in the FBI's National Incident-Based Reporting System ("NIBRS"), Rape is the carnal knowledge of a person, without the consent of the person, including instances where the person is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental or physical incapacity.

**Consent**. Consent is defined as words or conduct indicating a freely given agreement to have sexual intercourse or to participate in sexual activities. Silence or lack of resistance does not imply consent. Consent for one sexual act does not imply consent for any subsequent sexual act, and consent must be on-going. Sexual contact will be considered "without consent" if no clear consent, verbal or non-verbal, is given; if inflicted through force, threat of force, or coercion; or if inflicted upon a person who is unconscious or who otherwise reasonably appears to be without the mental or physical capacity to consent.

> (3) Incapacitation. Incapacitation is defined as a temporary or permanent state in which an individual is unable to give consent to sexual contact due to mental, developmental, or physical impairment, to include incapacitation, voluntarily or involuntarily, from alcohol or drug use. States of incapacitation include, but are not limited to: sleep, unconsciousness, intermittent consciousness, or any other state in which an individual is unaware that sexual contact is occurring. Where alcohol or drug use is involved, incapacitation is a state beyond mere intoxication, or impairment of judgment.

The panel found by a preponderance of the evidence that **ROE** was incapacitated and therefore unable to consent to sex on December 7, 2021 when **ROE** and **DOE** had sex. **ROE** ingested THC before **ROE** and **DOE** had sex and at the time of sexual contact **ROE** was mentally and physically impaired and was in a state of intermittent consciousness as a result of ingesting THC. When **DOE** penetrated **ROE** vagina with his penis she was incapacitated and was not able to consent to sex. Therefore, based on all the facts of circumstances and by a preponderance of the evidence, **DOE** conduct constitutes Sexual Assault (Rape) in violation of the University's Title IX Sexual Harassment Policy.

## VI. INFORMATION REGARDING THE SANCTIONING PROCESS

Pursuant to the University's Title IX Sexual Harassment Policy, a Sanctioning Panel will be convened for the purpose of making recommendations to the Dean of Students or designee, who will render the final decision regarding sanctions. The parties will be provided with at least five (5) calendar days advance notice of the Sanctioning Panel's deliberation date.

WRITTEN DETERMINATION:   **ROE   DOE**

The Complainant and the Respondent may challenge a member of the Sanctioning Panel on the grounds of conflict of interest or bias for or against complainants or respondents generally, or an individual Complainant or Respondent. The Title IX Coordinator or designee will assess the challenge and determine, in their sole discretion, whether a different Sanctioning Panel member should be assigned.

The Complainant may submit a written statement to the Sanctioning Panel, describing the impact of the Title IX Sexual Harassment on the Complainant, and expressing a preference about the sanction(s) to be imposed. The Respondent may submit a written statement explaining any factors that the Respondent believes should mitigate or otherwise be considered in determining the sanction(s) to be imposed. The Complainant and the Respondent my provide their statement orally or they may be submitted into the record for consideration by the Sanctioning Panel. The Complainant, the Respondent, and advisors are excluded from the Sanctioning Panel's deliberations.

Please see the Title IX Sexual Harassment Policy for further information regarding the sanctioning process.

## VII. APPEAL

The University's Title IX Sexual Harassment Policy provides for an appeal, following the issuance of any sanctions, or if there is no finding of responsibility, the issuance of the written finding of no responsibility.

The determination of responsibility and/or the sanction(s) imposed may be appealed by either the Complainant or the Respondent. Appeals must be submitted, in writing, to the appropriate university administrator, as defined in the Title IX Sexual Harassment policy within seven (7) calendar days after the notice of the case outcome.

Should an appeal be submitted by the Complainant or the Respondent, the other party shall be notified, in writing, when that appeal is filed and given an opportunity to respond within seven (7) calendar days of notification that an appeal has been submitted.

The determination of responsibility and/or the sanction(s) imposed may be appealed on the following limited bases:

   a) Procedural irregularity that affected the outcome of the matter;
   b) New evidence that was not reasonably available at the time the determination regarding the responsibility or dismissal was made that could affect the outcome of the matter;
   c) The Title IX Coordinator, Investigator, or decision-makers had a conflict of interest or bias for or against complaints or respondents generally, or the individual Complainant or Respondent that affected the outcome of the matter; or
   d) Insufficient/excessive sanctions.

The University's goal is to complete the appeal within approximately twenty-one (21) calendar days after the receipt of the written appeal.

Please refer to the Title IX Sexual Harassment Policy for further information on the appeals process.