# EXHIBIT D

# OFFICE OF EQUITY & TITLE IX

**WRITTEN DETERMINATION:**     **DOE**          **ROE**

| | |
|---|---|
| **Date of Written Determination:** | November 14, 2023 |
| **Complainant:** | **DOE** <br> Status: Undergraduate Student |
| **Respondent:** | **ROE** <br> Status: Undergraduate Student |

**Hearing Panelists**: John O'Malley (Chair), Katerina Kulagina, Seth Mancini

## I.    ALLEGATIONS

On January 30, 2023, the Office of Equity and Title IX initiated an investigation into a complaint alleging that Respondent **ROE** an undergraduate student, violated American University's Title IX Sexual Harassment Policy. Complainant **DOE** an undergraduate student, alleged that in fall 2021, his former sexual partner, Respondent **ROE** subjected him to dating violence and sexual assault (rape). For example, Complainant **DOE** alleged that in or around mid-October 2021, Respondent **ROE** slapped him twice across the face during a private conversation in her dormitory located in Letts Hall. Complainant **DOE** also alleges that on December 7, 2021, Respondent **ROE** forcibly inserted his penis into her vagina without his consent in her on-campus dormitory.

## II. PROCEDURAL STEPS

1/30/2023: Notice of Allegations was issued by the Office of Equity and Title IX, identifying **DOE** as the complainant and **ROE** as the respondent.

2/21/2023: Notice of Allegations was issued by the Office of Equity and Title IX identifying **ROE** as the complainant and **DOE** as the respondent. One investigation was completed into the allegations of both parties as the allegations arose out of the same facts or circumstances.

2/22/2023: **DOE** met via Microsoft Teams for an investigatory interview.

3/8/2023: **DOE** met via Microsoft Teams for an investigatory interview.

3/13/2023: **DOE** met via Microsoft Teams for an investigatory interview.

3/20/2023: **ROE** met via Microsoft Teams for an investigatory interview.

3/29/2023: **S-1** met via Microsoft Teams for an investigatory interview.

3/30/2023: **S-2** met via Microsoft Teams for an investigatory interview.

3/30/2023: **S-3** met via Microsoft Teams for an investigatory interview.

3/31/2023: **ROE** met via Microsoft Teams for an investigatory interview.

4/3/2023: **S-4** met via Microsoft Teams for an investigatory interview.

4/4/2023: **S-5** met via Microsoft Teams for an investigatory interview.

4/5/2023: **S-6** met via Microsoft Teams for an investigatory interview.

4/6/2023: **S-8** met via Microsoft Teams for an investigatory interview.

4/6/2023: **S-9** met via Microsoft Teams for an investigatory interview.

4/6/2023: **S-7** met via Microsoft Teams for an investigatory interview.

4/17/2023: **ROE** met via Microsoft Teams for an investigatory interview.

WRITTEN DETERMINATION: **DOE   ROE**

4/18/2023:        **S-13**            met via Microsoft Teams but declined an investigatory interview.
4/19/2023: **DOE** met via Microsoft Teams for an investigatory interview.
4/26/2023: **DOE** met via Microsoft Teams for an investigatory interview.
5/11/2023 – 5/15/2023: Witness Review Period
5/22/2023 – 5/26/2023:        **S-13**            Review Period[1].
6/2/2023 -        **S-13**            s met via Microsoft Teams to make real-time edits to his statement.
7/10/2023 – 7/19/2023: Preliminary Case Review Period.
8/17/2023 – Final Report Issued
10/25/2023 – Live Hearing.  In addition to the parties and their advisors and the panelists, the following witnesses appeared at the live hearing:        **S-2**            **S-1**    ,        **S-7**        ,        **S-5**    ,    **S-3**    ,        **S-6**

**Contact Attempts**
        **S-13**        verbally declined to participate in the investigation during a Microsoft Teams meeting on April 18, 2023.

**Review of Witness Statements**
The investigator sent each witness a summary of their interview and requested they review the summary.    **S-1** ,    **S-3** ,    **S-2** ,    **S-5** , and    **S-6**    responded with feedback.    **S-9** ,    **S-7** , and    **S-8**    did not respond to the investigator's email. Prior to reviewing his statement,        **S-13**            requested that his witness statement be rescinded because he did not believe he recalled the events pertaining to this investigation accurately;        **S-13**            , ultimately provided his edits to the document during a Microsoft Teams meeting.

## III. FINDINGS OF FACT SUPPORTING THE DETERMINATION

The hearing panel finds the following facts:

- No corroboration was identified to support **DOE** allegation that **ROE** slapped him.
- **DOE** did not mention to anyone that **ROE** slapped him until after the events of December 7, 2021.
- The statements made by **DOE** to third parties where he accused **ROE** of raping him were not credible.
- **ROE** gave consistent statements regarding the events of December 7, 2021, and were credible.
- The audio recordings made by **ROE** were not made under duress and the statements made by **DOE** on those recordings were credible.
- **DOE** gave conflicting accounts of the events on December 7, 2021.  The statements made by **DOE** to **ROE** and other third parties contained in the report where he admitted that he lied about his version of the events on December 7, 2021, were credible.
- **DOE** admitted to being a rapist, acknowledged that **ROE** was high on December 7, 2021, and apologized for his conduct.
- **DOE** acknowledged that he witnessed **ROE** ingest THC with her dab pen prior to penetrating her vagina with his fingers and penis, and later admitted that **ROE** was high when he penetrated her vagina with his fingers and penis.
- **ROE** was under the influence of THC on December 7, 2021.
- **ROE** was mentally and physically impaired and was in a state of intermittent consciousness when **DOE** penetrated **ROE** vagina with his fingers and penis.
- **DOE** was not intoxicated nor incapacitated on December 7, 2021, when **ROE** and **DOE** had sex.

WRITTEN DETERMINATION: **DOE   ROE**

## IV. CONCLUSIONS REGARDING THE APPLICATION OF TITLE SEXUAL HARASSMENT TO THE FACTS

The Hearing Panel finds that based on the information provided through both the investigative report and the hearing, the preponderance of the evidence supports the conclusion that **ROE** is **NOT RESPONSIBLE** for violating the University's Title IX Sexual Harassment Policy by engaging in the prohibited conduct of dating violence.

The Hearing Panel finds that based on the information provided through both the investigative report and the hearing, the preponderance of the evidence supports the conclusion that **ROE** is **NOT RESPONSIBLE** for violating the University's Title IX Sexual Harassment Policy by engaging in the prohibited conduct of sexual assault (rape).

## V. RATIONALE AND DETERMINATION OF RESPONSIBILITY

The University's Title IX Sexual Harassment Policy [2020-2021] provides the following relevant definitions, which are identical to the definitions found in the Title IX Sexual Harassment Policy effective August 14, 2020:

> **Dating Violence** - As defined in 34 U.S.C. § 12291(a)(1), Dating Violence is defined as violence committed by a person (i) who is or has been in a social relationship of a romantic or intimate nature with the other person; and (ii) where existence of such a relationship shall be determined based on a consideration of the following factors: the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship.

> **Sexual Assault** - As defined in 20 U.S.C. § 1092(f)(6)(A)(v), Sexual Assault constitutes any sexual act directed against another person, without consent of the person, including instances in which the person is incapable of giving consent.

> The following is a type of sexual assault:

>> **Rape**. As defined in the FBI's National Incident-Based Reporting System ("NIBRS"), Rape is the carnal knowledge of a person, without the consent of the person, including instances where the person is incapable of giving consent because of his/her age or because of his/her temporary or permanent mental or physical incapacity.

**Dating Violence**

The Hearing Panel found that **DOE** and **ROE** had been in a social relationship of an intimate nature. However, there was not a preponderance of the evidence that **ROE** had slapped **DOE** in October 2021, as **DOE** alleged. Neither the investigation nor the hearing revealed any corroborating evidence that **ROE** slapped **DOE** The evidence obtained through the investigation and the hearing shows that **DOE** never mentioned to anyone that **ROE** had slapped him on or around October 2021, until after December 7, 2021. Therefore, based on all of the facts and circumstances and by a preponderance of the evidence, **ROE** conduct does not constitute Dating Violence under the University's Title IX Sexual Harassment Policy.

**Sexual Assault (Rape)**

The Hearing Panel found by a preponderance of the evidence that **ROE** was incapacitated and therefore unable to consent to sex on December 7, 2021, when **DOE** alleges that **ROE** forcibly inserted his penis into her vagina.  Conversely, **DOE** was not intoxicated nor incapacitated on December 7, 2021, when he

WRITTEN DETERMINATION: **DOE   ROE**

penetrated her vagina with his fingers and penis.  **ROE** had ingested THC and at the time of sexual contact, **ROE** was mentally and physically impaired and was in a state of intermittent consciousness as a result of ingesting THC.  When **DOE** penetrated  **ROE**  vagina with his penis she was not able to consent to sex. Therefore, based on all the facts and circumstances and by a preponderance of the evidence,  **ROE** conduct does not constitute Sexual Assault (Rape) under the University's Title IX Sexual Harassment Policy.

## VI. INFORMATION REGARDING THE SANCTIONING PROCESS

There has not been a finding of responsibility, therefore the sanctioning process will not be initiated.

## VII. APPEAL

The University's Title IX Sexual Harassment Policy provides for an appeal, following the issuance of any sanctions, or if there is no finding of responsibility, the issuance of the written finding of no responsibility.

The determination of responsibility and/or the sanction(s) imposed may be appealed by either the Complainant or the Respondent. Appeals must be submitted, in writing, to the appropriate university administrator, as defined in the Title IX Sexual Harassment policy within seven (7) calendar days after the notice of the case outcome.

Should an appeal be submitted by the Complainant or the Respondent, the other party shall be notified, in writing, when that appeal is filed and given an opportunity to respond within seven (7) calendar days of notification that an appeal has been submitted.

The determination of responsibility and/or the sanction(s) imposed may be appealed on the following limited bases:

a)  Procedural irregularity that affected the outcome of the matter;
b)  New evidence that was not reasonably available at the time the determination regarding the responsibility or dismissal was made that could affect the outcome of the matter;
c)  The Title IX Coordinator, Investigator, or decision-makers had a conflict of interest or bias for or against complaints or respondents generally, or the individual Complainant or Respondent that affected the outcome of the matter; or
d)  Insufficient/excessive sanctions.

The University's goal is to complete the appeal within approximately twenty-one (21) calendar days after the receipt of the written appeal.

Please refer to the Title IX Sexual Harassment Policy for further information on the appeals process.