**UNITED STATES DISTRICT COURT
FOR
THE DISTRICT OF COLUMBIA**

JOHN DOE,

PLAINTIFF

vs.

AMERICAN UNIVERSITY,

DEFENDANT.

Civil Case No. 1:25-cv-03866-ACR

**AMENDED COMPLAINT**

1.      John Doe, proceeding anonymously, brings this Amended Complaint against American University ("American" or "the University") for violating 20 U.SC. § 1681 ("Title IX") and of the District of Columbia Human Rights Act, D.C. Code § 2-1402.01, et seq., and for breach of contract, and breach of the implied covenant of good faith and fair dealing.  Doe was an 18-year-old college freshman with no prior sexual experience who was seduced by a manipulative female student.  After several months of an on-again/off-again relationship, he sought to get out of their relationship, but she retaliated by concocting a false narrative that he had raped her one evening when she had invited him into her bed several months earlier.  At the same time, she assailed the University's Tithe IX office for mishandling an earlier complaint she had brought against yet another student.  American was beset by campus-wide protests, in which Doe's accuser played a leading role, claiming institutional indifference to charges of sexual assault against female students.  American eventually found Doe guilty and suspended him after a procedurally flawed process, based on the fundamental misconception that any level of intoxication nullified the female students admissions of consent.  Then, after concluding the process, American retaliated against the Doe by charging him with "dishonesty"; whereas American brought no similar action against his female accuser for her obvious dishonesty.

1

## I.    PARTIES

2.     American University ("American" or the "University") is a federally chartered institution of higher learning having its principal place of business at 4400 Massachusetts Ave NW, Washington, D.C.  American receives federal financial assistance.

3.     John Doe is a citizen of Maryland.  He was an undergraduate student at American University from August 2021 until February 2024, when he was wrongfully suspended through May 15, 2025, following a Formal Complaint process under American University's Title IX Sexual Harassment Policy ("the Policy") in which he was both the complainant and respondent.

## II.    JURISDICTION AND VENUE

4.     Under 28 U.S.C. § 1331, this Court has jurisdiction because this case arises under the laws of the United States (Title IX), and this Court may exercise jurisdiction over all of John Doe's claims arising under the laws of the District of Columbia by exercising its supplemental jurisdiction under 28 U.S.C. § 1367(a).  The Court also has jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity between the parties, where plaintiff is a citizen of Maryland; Defendant's headquarters and principal place of business is the District of Columbia; and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.     Venue is proper under 28 U.S.C. § 1391(b) because the Defendant resides within this District, in which substantial part of the events, acts, and omissions giving rise to John Doe's claims occurred.

## III.    FACTUAL ALLEGATIONS

**John Doe and Jane Roe initiated a consensual sexual relationship in their first semester.**

1.     At all relevant times American required consent prior to any sexual act, which its Title IX Sexual Harassment Policy ("Title IX Policy") defined as:

words or conduct indicating a freely given agreement to have sexual intercourse or to participate in sexual activities. Silence or lack of resistance does not imply consent. Consent for one sexual act does not imply consent for any subsequent sexual act, and consent must be on-going. Sexual contact will be considered "without consent" if no clear consent, verbal or non-verbal, is given; if inflicted through force, threat of force, or coercion; or if inflicted upon a person who is unconscious or who otherwise reasonably appears to be without the mental or physical capacity to consent.

Title IX Policy, § III(D).

2.     "Jane Roe" was a female student who, from about 2021 to about Spring 2025 was enrolled at American.  She will be referred to by this pseudonym.

3.     Mr. Doe and Ms. Roe met early in the Fall 2021 Semester. They lived on the same floor of their freshman dormitory. Shortly afterwards, they began to engage in a sexual relationship which entailed consensual kissing, touching, oral sex, and digital penetration of Jane Roe's vagina.

4.     Then, in early October 2021, Jane Roe asked, and John Doe agreed, to return to a non-sexual relationship.  About two weeks later, he returned after a weekend away to find that she wanted to cuddle.  Their casual, sexual relationship rekindled, beginning with mutual kissing in her dorm room.  She offered no explanation for requesting a pause nor her reversal. Meanwhile, she began another casual, sexual relationship with Student W, who lived on the same floor, and that relationship continued into early 2022.

5.     Late in the evening of November 2, 2021, Plaintiff and Ms. Roe had sexual intercourse for the first time.  They were watching a film for one of her classes in his room.  She announced that the last 30 minutes of the movie were best viewed after using her "weed pen," an electronic THC delivery device.  After the movie, Mr. Doe felt pressured by Ms. Roe to engage in sexual intercourse.  Despite Ms. Roe using THC, she never disputed that this incident was consensual or that intoxication rendered her incapable of consent.

3

**Jane Roe displayed jealousy towards John Doe.**

6.     Although Ms. Roe and Mr. Doe had resumed a full-fledged sexual relationship, she expressed displeasure with when he complimented a mutual friend, another female student, as having "effervescent blue" eyes, which is how he had referred to Ms. Doe's eyes.  She cupped his face and with an open palm and slapped him.  Then she kissed him, and slapped him again, because he supposedly "liked it."  Shortly afterwards, she dismissed him from her room.

7.     Shortly before John Doe and Jane Roe has sex for the first time, at the end of October 2021, American's "Holloweekend" arrived.  This is a campus celebration that customarily included experimentation with drugs and alcohol.  Ms. Roe participated with gusto.  For instance, on October 28, 2021, she went clubbing with her friends.  While taking the Washington D.C. Metro, one of the friends became seriously intoxicated and had to get off the train at the Woodley Park Zoo/Adams Morgan stop.  Ms. Roe contacted Mr. Doe and asked him to meet them there.  He did so and then walked them to the dorm in the wee hours of October 29, 2021.

8.     Ms. Roe and Mr. Doe agreed that she would stay in his room that night.  Although when no sexual intercourse occurred that night, she made clear her disappointment that nothing of a sexual nature happened.

9.     Several days later, Mr. Doe held a party in his dorm room, where alcohol was served.  He had no experience drinking but took several shots.  Ms. Roe drank even more.  As the evening progressed, he left his dorm room to hang out with friends.  Ms. Roe sought him out and led him to her room, allegedly to retrieve wine and cheese from her mini fridge.  Once they had entered her dorm room, she closed the door behind them, interrupted him as he moved toward the mini fridge, and began to kiss him.

10.     Ms. Roe said that she wanted to have sex with Mr. Doe.  He was reluctant to participate.  It was his mistaken impression—shared by others among the student body who had participated in American University's training courses on student conduct—that any intoxication rendered adults incapable of consent.  Ms. Roe told him that refusing sex because someone is intoxicated was a "silly rule" that they did not need to follow.

11.     Mr. Doe declined her overtures and left her room.  She then sent him text messages inviting him to come to her, but Student J and Student C, the couple's respective roommates, urged him not to respond to her messages.  However, she persisted.  She sent John Doe another message asking him to come over and cuddle and assured him that she had sobered up.  However, he had put his phone away.  She then followed up her unanswered messages with a string of angry messages on Snapchat, a self-deleting messaging app.  The messages ranged from vulgar epithets like "Fuck you" to recriminations like "I thought you cared about me."  The next morning, she apologized to him.

12.     This pattern repeated itself in their subsequent interactions.  Ms. Roe used Snapchat alternatively to harangue him but also copied selected portions of their messages which she later used against him in the student disciplinary process underlying this suit, while deleting those portions that tended to exonerate him.  The fact that Jane Roe provided only selective evidence was never considered by the University in assessing her credibility in the later Title IX campus proceedings, even though Mr. Doe called that conduct to the University's attention.

13.     Over the next several weeks leading up to the Thanksgiving holidays, Ms. Roe's manipulative conduct characterized their relationship and was particularly aimed at obtaining his consent in sexually charged situations in which he shied away from her advances.

**Jane Roe and John Doe resume their sexual relationship**

14.    Mr. Doe and Ms. Roe returned to campus after the 2021 Thanksgiving break. Shortly afterwards, she sent him a message requesting that they end their sexual relationship. Nevertheless, they continued to engage in kissing and fondling, but not intercourse.  He was aware that she intended to bring an old boyfriend to stay with her the next weekend and presumed that this caused her on-again-off-again behavior.

15.    On December 1, 2021, Ms. Roe called Plaintiff to say that her class the next morning had been canceled.  The couple then spent the night in his dorm room.  After kissing, she eventually clasped his hand and shoved it into her pants, first telling him to digitally penetrate her vagina and then inserted his fingers herself.

16.    Mr. Doe was surprised, saying he thought that they had agreed not to do anything sexual.  However, she informed him that they were, in fact, once more a couple engaging in sexual relations.  With her explicit consent, between December 2 and December 5, 2021, the couple engaged in mutual oral sex.

**The events of December 7, 2021**

17.    Ms. Roe's fickle yet possessive behavior continued.  She began saying that Plaintiff purportedly did not pay enough attention to her.  This claim led to a public disagreement in the early evening of December 7, 2021, in which she repeated this accusation.  What Ms. Roe meant was unclear to him, as she was maneuvering between multiple partners at the time—John Doe knew of at least two others, one off campus and another on-campus relationship.  He had distanced himself from her because of those relationships, only to be met with her displeasure about his lack of engagement with her.  Ultimately she invited him to her dorm room to discuss their "relationship."

6

18.    As they "made up," she began rubbing her buttocks against John Doe's crotch as he hugged her from behind, telling him (referring to herself) that there was "a really hot girl on his floor that liked him."  She also revealed that she did not have underwear on.  At first the couple engaged in mutual, consensual sexual touching and kissing.

19.    Between around 9:30 p.m. and 10:00 p.m., she took two puffs from her "weed pen."  She did not show any signs of incapacity or noticeable impairment.  To the contrary, she appeared to be in control of her ability to consent or refuse sexual advances.  For instance, when Mr. Doe asked if she would perform oral sex on him, she declined and said that she wanted to cuddle in bed, which the couple then did by climbing into her loft, approximately 5 feet off the floor.  Ms. Roe had sufficient control of her faculties to climb the ladder without assistance.

20.    After the couple climbed into her loft bed, they continued to engage in sexual touching and kissing while clothed.  She again manifested her capacity to make decisions by requesting that he remove her necklace, telling him to re-clasp it so it would not get tangled, and instructing him where to put it.  Around midnight, she unbuckled his belt and told him to take off his pants and underwear, removed her pants and then told him to penetrate her vagina with his penis.  At first, he hesitated.  She said that they both needed to get naked to have sex.  Initially he tried to deflect her overtures by returning to kissing.  However, without asking for his affirmative consent, she inserted his penis into her vagina, an act she later admitted to in a conversation she recorded with John Doe on January 25, 2022.

21.    The night of December 7, 2021, when he withdrew seconds later, Jane Roe reinserted his penis and locked her limbs around him, again without affirmative consent as defined in American's policies.  After he reached a climax, Jane Roe requested more sex, which

7

he declined.  That evening's sexual activity concluded around midnight or in the early minutes of December 8, 2021.

**Jane Roe's emotional abuse continues into the next semester.**

22.     Ms.  Roe initially took responsibility for their sexual interactions of the night of December 7/December 8, 2021.  For instance, she did not accuse Mr. Doe of misconduct or remonstrate with him over the events of that evening.

23.     American's winter break began in mid-December 2021.  At this time, she announced that she wanted to end their sexual relationship and continue as friends.  Mr. Doe agreed and later expressed that he did not want to return to a sexual relationship because he felt pressure to accede to what she wanted at the expense of what he wanted.

24.     During this period Ms. Roe saved only selected messages from John Doe via screenshots but discarded her messages encouraging him to remain in what was fast becoming an abusive relationship.

25.     When American's students returned to campus for the spring 2022 semester, COVID-19 had begun to spread again.  The University delayed resuming in-person classes until the end of January and meanwhile very few students were on campus.  For instance, Student C and Student J, their respective roommates, were absent.  However, Mr. Doe confided in two friends who'd returned to classes, Student G and Student R, that he felt it difficult to refuse Ms. Roe's sexual advances and believed she had taken advantage of him.

26.     And once more, despite purportedly wanting to remain "friends," Jane Roe reversed course.  She began texting Plaintiff about wanting him, with an intensity that became more and more sexually aggressive.  She would show up at his dorm room door sometimes intoxicated, sometimes not, but always making more direct and overtly sexual comments after she had been drinking.

27.     Around mid-January 2022, Mr. Doe told her that he found her on again/off again behavior confusing, and he preferred to have a platonic relationship.  However, while watching a movie with other students, Ms. Roe maneuvered to sit with him under a blanket, snuggled up to him, and grabbed his hand to put it on her thigh.

**Ms. Roe retaliates after Mr. Doe rebuffed her sexual advances.**

35.     It was only in this context of his seeking to extricate himself from their relationship that Jane Roe began to accuse Mr. Doe retrospectively of having "raped" her during the night of December 7, 2021.  For example, she accused him of being at fault for their sex on that evening because he was physically stronger and purportedly could have forced *her* to stop *her* advances.  She also accused him of lying and having taken advantage of her.  John Doe soon learned that she was repeating these accusations throughout the dorm and eventually, to the Title IX Office.  In their in-person conversations, to avoid the unpleasantness of arguing with her, Mr. Doe stop challenging Ms. Roe's accusations.

28.     Toward the end of the semester, in mid-April 2022, posters also began to appear on their dorm floor, with John Doe's name, photograph, and screenshots from Ms. Roe's private Snapchats of selected messages from Mr. Doe.  The posters accused him of being a "rapist." Although Ms. Roe denied posting these pictures, the Snapchat screenshots could have only come from her phone.

29.     The posters also spread the false allegation that Ms. Roe had been unable to consent to sex because she had used THC/marijuana.  This reflected a false narrative of "consent" disseminated by American's Title IX Office to the student body, and eventually reflected in its written decision suspending John Doe, namely that contact with intoxicating substances somehow renders a user incapable of consenting to sex.

9

30.    Friends and acquaintances began to harass Mr. Doe. Some contacted him in the middle of the night and accused him of "raping" their friend. As a result of this pestering, which he made known to American, Plaintiff could barely eat, feared for his safety on campus, and had to request that an in-person exam be moved online. The false allegations spread by Jane Roe also caused his friends largely to desert him. He was left with no living arrangement for the following school year.

**Public pressure on American to protect alleged female "victims" of sexual assault impaired the Title IX Office's impartiality.**

31.    Mr. Doe returned to campus in fall 2022, when American's campus became immersed in turmoil over a misperceived threat of rampant sexual assault on campus. In one instance, the campus erupted in protests after a young male student entered an all-female dormitory and attempted to take a student's underwear early in the morning hours of October 31, 2022. The alleged perpetrator pleaded guilty to sexual abuse.[1]

32.    Jane Roe[2] and her roommate, Student J,[3] played an influential role in what morphed into a campus-wide protest movement. Both were cited in articles alleging sexual violence on campus. The aforementioned sexual assault and the University's ostensible failures to respond became publicized in national media as well.[4] For instance, Ms. Roe wrote an article

---

[1] https://www.theeagleonline.com/article/2024/06/breaking-former-au-student-pleads-guilty-to-leonard-hall-sex-abuse-burglary. (June 14, 2024).

[2] ████████████████████████████████████████████

[3] ████████████████████████████████████

[4] https://www.thenation.com/article/activism/american-university-walkout-sexual-assault-dorm-break-in/. (December 7, 2022); https://www.washingtonpost.com/education/2022/11/02/american-university-sexual-assault-investigation/. (November 2, 2022).

in the student paper, the *American Agora*, in which she lamented that, in one previous Title IX case, the University opposed moving the date of her live hearing to accommodate her vacation.[5] She compared that to a restraining order which she had secured against "a guy" who was an "abuser" through the court system, where she "left triumphant" and had been given "the proper channel to seek justice…."[6]

33.    Ms. Roe also baldly asserted that "[the Title IX office does] not seek justice; they do not protect victims; they resolve the cases with the lowest possible sanctions to protect the university from legal ramifications from either party," and charged that the "Title IX staff was outright apathetic or hostile towards me."[7]

34.    Ms. Roe also announced, "I was raped in my freshman dorm room on December 7th, 2021, when I was intoxicated and could not consent." She therefore stood at the forefront of a campus-wide movement to effect change in American's Title IX process, one that had drawn protests and demonstrations a few days earlier and received national media attention, and attracted publicized attention from parents on campus tours with prospective students.[8] As one student leader put it, "Ruin their reputation, make a scene, be annoying, be loud and hold these motherf*****s accountable."[9]

35.    Throughout this time, public pressure on the University's Title IX program significantly increased in more direct ways. On October 26, 2023, Student J, the then-Secretary of American's Student Government, hosted a town hall in which she questioned American's



[6] *Id.*
[7] *Id.*
[9] *Id.*

11

Title IX Coordinator. Ms. Roe and her roommate, Student J, were highly vocal voices at the event.  Anonymous questions were asked, including statements by "[m]any students … questioning the effectiveness of the Office's efforts in supporting survivors of sexual assault."[10] Another student demanded to know "how [the Title IX Office's] staff plan to regain the trust of students who feel 'betrayed and let down...'"[11]

36.    On November 12, 2023, Student J organized and spoke at another campus rally commemorating the one-year anniversary of the previous year's protest over a purported rash of sexual violence on campus.[12] Student J pressured American for policy changes "giving survivors the chance to talk about why these policies would impact them, talk about systems that have failed them and bring attention to that."[13]

37.    On December 8, 2023, the student newspaper published an opinion piece admonishing the University's supposedly lackluster responses to "sexual violence." The article asserted that "59 percent of undergraduate women and 23 percent of undergraduate gender non-conforming people experience sexual misconduct or violence while enrolled in university, and those are only the reported cases."[14]  Yet American has approximately 7,476 undergraduate students, with female students comprising approximately 62% (4635) of them.[15] So, even assuming an average student spent 5 years at American rather than 4, this opinion piece suggests that every year more than 546 female students were victimized by violent sexual misconduct. This supposed statistic on "sexual violence" would put campus crime solely due to sexual assault

---

[10] *Id.*

[11] *Id.*

[12] ████████████████████████████████████████████

[13] *Id.*

[14] https://www.theeagleonline.com/article/2023/12/opinion-one-year-later-survivors-are-still-waiting. (December 8, 2023).

[15] See https://www.usnews.com/best-colleges/american-university-1434.

at approximately *7315* per every 100,000 undergraduate students.  By contrast, Washington DC, not known for low violent crime rates, reported only 35 incidents of rape per 100,000 people in 2024.[16]

38.    Like all universities that receive federal funding, American must report campus crime statistics in its Clery Act reports to the federal government.[17]  The ***total*** sexual assaults reported by American for the entire three-year period from 2022-2024 was only 6.[18]  And the same student paper that had suggested an artificial, almost 60% sexual assault rate of women on campus later reported on December 16, 2025: "[In] 2023 [American] had no reported cases of rape, fondling or assault and fewer domestic violence, stalking and burglary."[19]

39.    In short, Jane Roe and her roommate's statements (and those of other students) pressured American to pursue claims of sexual misconduct against women despite a lack of empirical evidence.

40.    Conversely, sexual misconduct against men was not even mentioned amidst this campus hysteria.  Not until November 2024 did American's campus newspaper reveal an evident double standard in how the school's Title IX office perceives male who claim of sexual misconduct by women.  A male sophomore who claimed to be "a survivor himself" described selective enforcement of Title IX when it came to American's male students:

> "I worked with [the Office of Equity and Title IX] and was essentially told that my story was fake," [the male student] said. "I know other male victims who have been told a very similar thing, or, never even were contacted back by them. Male victims are real and are on this campus." [20]

---

[16] See http://usafacts.org/answers/what-is-the-crime-rate-in-the-us/state/washington-dc/
[17]  American University, Annual Security Report, September 30, 2025, at 98, available at https://www.american.edu/finance/publicsafety/upload/2025-annual-security-report.pdf
[18] Id.
[19] https://www.theeagleonline.com/article/2025/12/aus-annual-security-review-of-campus-safety-and-crime-data-released-this-fall (December 16, 2025)
[20] https://www.theeagleonline.com/article/2024/11/no-more-its-on-us-host-survivor-rally-and-art-exhibition. (November 26, 2024).

Another male student was quoted in a campus newspaper as having a similar dismissive experience with the University's Title IX Office.[21]

41.    In sum, the pressure on the University was all about female students, not about protecting the rights of the falsely accused.  As John Doe's selective treatment in the uneven investigation and hearing alleged below demonstrated, by "survivors," American means enforcing its official, stated policies for female students differently than it enforces the same policies for male students.

**The University conducted an irregular and biased investigation of Mr. Doe.**

42.    Although Ms. Roe held herself out as a campus advocate for victims of sexual assault, she only initiated a Title IX complaint against Mr. Doe until about February 21, 2023, after he had filed a complaint against her with American's Title IX Office three weeks earlier. He alleged that Ms. Roe had slapped him and manipulated him into having sex without his consent, constituting sexual assault and dating violence  as defined under American's policy.  He also accused her of coercion, stalking and harassment arising from her targeted campaign against him, complaints that American disregarded.

43.    The University conducted a Title IX investigation from approximately January 30, 2023-August 17, 2023.  But as this process got underway, another campus-wide protest erupted over alleged sexual assaults (on February 22, 2023).

44.    The University assigned Nicole Fauster ("Fauster") to be the investigator.  Early on, Mr. Doe informed her that he had made statements to Ms. Roe of sexually assaulting her, based on campus misconceptions flowing from its Title IX office seminars that sexual contact

---

[21] https://www.theeagleonline.com/article/2024/11/student-say-experiences-with-american-universitys-office-of-equity-title-ix-exposes-severe-flaws (November 14, 2024).

after ingesting an intoxicating substance *ipso facto* renders female students unable to consent to sex.

45.     Investigator Fauster asked Mr. Doe to identify witnesses and provide documentary evidence that he wished to present.  Mr. Doe identified Student M, indicating that Ms. Roe had told accounts of events to Student M at the time that contradicted her later statements about Mr. Doe.  However, in violation of §§ IV(H)(8)-(9) of American's Title IX Policy, Ms. Fauster never contacted Student M.  Nor did Ms. Fauster look into Mr. Doe's request to ask why Ms. Roe deleted her own Snapchat responses to Mr. Doe while selectively saving or taking screenshots of only his most compromising messages.

46.     In addition, the University Investigator is supposed to conduct "a thorough, fair and impartial investigation." Title IX Policy, § IV(H)(3).  Fauster's inquiry was not thorough.  Although Ms. Roe thought that Investigator Fauster "treated her better than any other employee in the Office," a male witness, Student G, felt that Investigator Fauster had mischaracterized him his testimony.

47.     It was undisputed that Jane Roe had ingested THC right before she climbed into her loft bed with John Doe, but not thereafter.  No credible evidence suggested that Jane Roe could have become *more* intoxicated while the couple were together after climbing into climbing into her loft bed on December 7, 2021.  Fauster's Investigation Report also indicated that Ms. Roe had testified to having sufficient capacity to decline sexual intimacy (e.g., declining oral sex).  Jane Roe also claimed to have "blacked out" due to consuming THC, although that is a scientifically dubious.  Her own testimony indicated not a black out, but selective memory.

**Retaliation against John Doe**

48.     American's Title IX Policy, § II, prohibits retaliation against those participating in the investigation/resolution of a formal complaint as well against a complaining "member of the

AU Community." John Doe was both a participant in the investigation/resolution of a formal complaint as well as a complaining "member of the AU Community" and thus protected from retaliation.

49.    While the University investigation was ongoing, Student C targeted John Doe. Student C was Mr. Doe's former roommate. He had been identified as a direct witness in the Doe-Roe Title IX process and Investigator Fauster interviewed him in the investigation. As Mr. Doe was on his way to class one day, Student C intercepted him on campus and yelled, "F*** you, you f***ing rapist." Mr. Doe reported this to Investigator Fauster and asked that American open a retaliation case against Student C. The University's Title IX Office did worse than nothing. Investigator Fauster complained Mr. Doe's report of Student C's language made her "uncomfortable." Then, during a March 2023 meeting, Title IX Coordinator Leslie Annexstein told Mr. Doe that Investigator Fauster would terminate any meeting if he used curse words again. Hearing how witnesses were openly cursing at Mr. Doe was of no concern. It was more important to protect the Title IX Investigator Fauster from feeling "uncomfortable."

**The Title IX hearing applied inconsistent evidentiary standards, resulting in American's arbitrary decision to suspend Mr. Doe.**

50.    American's Title IX office issued its Final Investigation Report concerning John Doe's and Jane Roe's complaints on August 17, 2023. It then took American over two months to schedule John Doe's live hearing, which occurred on October 25, 2023.

51.    With regard to John Doe's complaint that Jane Roe had sexually assaulted him, the panel's chairman, John O'Malley, allowed Ms. Roe's roommate, Student J, and another witness (Student A) to speak about John Doe's comments to them about past "consent" to sexual activity with Ms. Roe the first time that Doe and Roe had sexual intercourse (on November 2,

2021, when Jane Doe also used THC from her "weed pen") as if this was evidence proving his consent on December 7, 2021.

52.    American's Title IX policy at § III(D) specifically states that "Consent for one sexual act does not imply consent for any subsequent sexual act, and consent must be on-going." But when considering the male student John Doe's accusations, American was willing to credit evidence of his past "consent" to prove consent for December 7, 2021.  By contrast, however, when Mr. Doe tried to testify about his sexual experience with Jane Roe on days other than December 7, 2021, for example, concerning her pattern of using THC prior to their consensual sex, he was denied permission to speak on this topic.

53.    On November 14, 2023, American handed down two written determinations, one deciding John Doe's complaint against Jane Roe, the other deciding Jane Roe's almost symmetrical complaint against John Doe.  The Hearing Panel found that the female student was "consistent" whereas the male student gave "conflicting accounts."  For example, the decisions indicated that John Doe had never mentioned to anyone that Jane Roe had "slapped him until after the events of December 7, 2021."  But Jane Roe's statements were also inconsistent.  For example, the decisions indicated that John Doe had never mentioned to anyone that Jane Roe had "slapped him until after the events of December 7, 2021."  But Jane Roe's statements were also inconsistent in this way.  For example, Ms. Roe never referred to the events of December 7/8, 2021, as violent or constituting rape until after the fact as her story evolved.  And, on December 10, 2021, when she discussed the incident with John Doe, she merely averred that she had been "too high to consent," averring that being under the influence divested her of agency in their sexual interaction.

17

54.    There were additional contradictions in a contemporaneous recording that Ms. Roe provided as evidence.  She had secretly made the recording of a conversation with Mr. Doe on January 25, 2022, in which she can plainly be heard indicating her consent to their sex on the evening of December 7, 2021.  She admitted to Mr. Doe, "I remember tugging at like your pants like, 'I feel like you should take these off.'"  And, apparently notwithstanding pain from "that like tear down there [that] just barely healed before that"; she "remember[ed] like helping you put it [John Doe's penis] in, so that way, it wasn't physically painful for me."  In other words, Ms. Roe recorded her own contemporaneous statement indicating she actively placed Mr. Doe's penis inside of her.  At the very least, this was an unambiguous admission of her consent—and of Mr. Doe's affirmative innocence—which the University panel disregarded.  And despite Ms. Roe's later allegations, in the recording she never accused John Doe of "sexual violence."

55.    The determination to accept Jane Roe's testimony that she had "blacked out" was also flawed.  First, this really meant that she only could testify selectively about inculpatory evidence against Mr. Doe, but that her purported lack of memory made it impossible for her to remember any evidence demonstrating Mr. Doe's innocence.  For example, when asked by Investigator Fauster about her response to John Doe's allegations, she claimed only sufficient memory to "categorically den[y] forcing [John Doe's] penis into her vagina…" and to categorically deny saying any of the statements Mr. Doe attributed to her.  But someone who has "blacked out" cannot categorically deny having said or done anything that they have no memory of.  To American, however, Ms. Roe's selective memory did not count as an "inconsistency" or "dishonesty."

56.     Finally, although some people experience "blackouts" due to excessive alcohol consumption, the medical literature does not support the notion that THC inhalation causes blackouts or intermittent consciousness.

57.     On December 6, 2023, the University suspended Plaintiff through May 15, 2025, and banned him from all campus dormitories permanently.  American also caused John Doe to resign from his compensated position as Resident Assistant, thus discriminating against him in his employment as part of its so-called "disciplinary sanction."  He had received lodging from American as well through his RA position, and American forced him to leave this lodging.

**The biased appeal process**

58.     On November 16, 2023, Plaintiff emailed the Title IX Office asking that his attorney, Christophen Muha, be designated as his advisor and be granted access to the evidence. American's Title IX Coordinator Annexstein responded that "[t]he next step pursuant to the policy is that a sanctioning panel will be convened."  However, § IV(H)(1) of American's Title IX Policy provided that all parties must be "provided equitable opportunities, including…to review and present evidence."  There is no restriction on access to the evidence pending an appeal in the Policy. Yet Ms. Annexstein rejected requests by Mr. Doe and Mr. Muha for nearly two weeks, relenting only on November 27, 2023.  Her withholding of evidence (contrary to the Title IX Policy, § IV(H)(1)) shortened John Doe's window to appeal, leaving him with under two days, rather than the full seven days required by § IV(K)(2-3) of American's Title IX Policy. Truncating his appellate rights limited his counsel's ability to evaluate the record and defend Mr. Doe adequately.

59.     On February 14, 2024, American's Division of Student Affairs denied John Doe's appeal.  Mr. Doe is now branded a sex offender and American will maintain a permanent record of this in its files.

60.    Following this punishment, American further retaliated against John Doe by initiating a separate "Honor Code" violation for John Doe's alleged "dishonesty" during the proceedings.  The Title IX decision, however, did not make such a finding.  Furthermore, American did not bring "dishonesty" charges against Ms. Roe.  In addition, American has administered past Title IX complaints by female students who admittedly consented by saying "yes" to sexual encounters but simultaneously claiming to have really "meant" no—in other words, admitting to misrepresenting consent.  For example, this is what occurred in *Doe v. Am. Univ.*, No. 19-cv-03097 (APM), 2020 U.S. Dist. LEXIS 171086, *5 (D.D.C. Sep. 18, 2020).  But no female students have ever been retaliated against with charges of "dishonesty" after a Title IX process.

61.    Finally, another indication of American's retaliation against John Doe is how late this "dishonesty" complaint was initiated.  American's Student Conduct Code requires any complaint against a student to "be filed with the Director of Student Accountability and Restorative Practices ***within 30-calendar days*** of the occurrence or discovery of the alleged infraction(s)."  American did not charge Mr. Doe with supposed "dishonesty" until March 18, 2024, fully 145 days after his Title IX hearing (October 25, 2023) and long after any of his allegedly "dishonest" statements had been made in the investigation.

## IV.    CAUSES OF ACTION

### COUNT 1:  Violation of Title IX, 20 U.S.C. § 1681

62.    Plaintiff incorporates by reference in this paragraph all allegations set forth in this Complaint as if fully restated here.

63.    Title IX reads in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

64.    American University is subject to Title IX because it receives federal funding. American University discriminated against John Doe on the basis of sex because he is and was a male student.

65.    At the time the underlying case was investigated and prosecuted, American University was under undue pressure, from Jane Roe and her roommate Student J, who alleged, *inter alai*, that the University's Title IX Office was incompetent and ineffective; from students on campus and the school newspaper, who mounted campus-wide protests and ran stories decrying a nonexistent spate of "sexual violence" against female students on campus, and by similar articles in the national media charging pervasive sexual violence on American's campus. This unfavorable press coverage clamored for increased enforcement of sexual misconduct policies, particularly to the disadvantage of male students. By way of example, articles in American's student newspaper claimed astronomical, and indeed hallucinatory, rates of sexual assault against women on campus of almost 60%. Media attention focused on American's alleged failure to punish this alleged sexual assault on campus and placed enormous pressure on American to deviate from neutral policies and instead reach preconceived outcomes by punishing male students such as Mr. Doe.

66.    Due in substantial part to this extraneous pressure, American's Investigator Fauster and its hearing panel engaged in a results-driven process that ignored favorable evidence to John Doe to find him responsible as the male student and signal its firmness to the student body, alumni, and the general public.

67.    American engaged in the following unfair and discriminatory acts and practices, without limitation:

    (a) American deviated from its Title IX policies in a way that consistently disadvantaged the male student, John Doe, and advantaged the female student,

21

Jane Roe, each of whom appeared as complainants and respondents in the same investigation and eventual hearing. These deviations include, but are not limited to, 1) failing to investigate evidence provided by Mr. Doe and 2) forbidding him from discussing sexual interactions with Jane Roe when she had ingested THC other than on December 7, 2021, while otherwise allowing Jane Roe and her witnesses to provide testimony about John Doe's alleged past consent to sexual activity;

(b) American was deliberately indifferent to John Doe's suffering and the harm inflicted upon him due to his sex, as male, that arose on campus, as evidenced by Jane Roe and Student J's campaigns against him in the winter-spring of 2022, his roommate, Student C's, harassment of Mr. Doe during the Title IX process;

(c) Because of its bias and public pressure, American selectively enforced its Title IX policy against Mr. Doe, for example and without limitation, by labeling his story "inconsistent" while disregarding inconsistencies and Ms. Roe's story, including clear admissions that she consented to their sexual encounter on December 7, 2021, disregarding her selective testimony as to what she had "blacked out"; and expressly finding that intoxication constituted incapacity;

(d) American's deviations from its policies, selective enforcement, and biased investigation also led to an erroneous outcome in which John Doe was found responsible, but Jane Roe was not found responsible, largely due to disregarding Ms. Roe's express admissions and crediting Ms. Roe's scientifically unfounded account of having "blacked out" while knowingly seducing Mr. Doe on December 7/8, 2021; and

(e) American retaliated against and punished John Doe for alleged "dishonesty" in the process, whereas Jane Roe was never sanctioned for her dishonesty, in particular that she had affirmatively consented to their sexual relations on December 7/8, 2021 and had not purportedly "blacked out" from ingesting THC, a claim without any scientific or rational basis.

68.    American University is therefore liable under Title IX. Due to American University's violations of Title IX and because of its retaliation against John Doe for bringing a Title IX complaint against Jane Roe, John Doe has suffered damage in an amount to be proved at trial.

## COUNT 2:  Breach of Contract

69.    Plaintiff incorporates by reference in this paragraph all allegations set forth in this Complaint as if fully restated here.

22

70.     Under the law of the District of Columbia, the relationship between an institution of higher education and its students is contractual in nature.  John Doe paid tuition in exchange for the educational services of American University.  In turn, and without limitation, American's Title IX Policy and Student Honor Code constituted a binding contract between John Doe and the University.

71.     American University breached its contractual obligations under its Title IX Policy by, without limitation, the acts and practices hereinabove alleged, including but not limited to::

(a)    Failing to interview or include witnesses provided by John Doe.

(b)    Forbidding John Doe from submitting relevant evidence of retaliation to the Investigator because it might make her "uncomfortable."

(c)    Failure to apply the preponderance of the evidence standard.

(d)    Failure to permit John Doe to present evidence in the hearing, by way of example, forbidding him from discussing consensual sexual relations with Jane Roe when she had ingested THC other than on December 7, 2021 (while otherwise allowing Jane Roe and her witnesses to provide testimony about John Doe's alleged past consent to sexual activity).

(e)    Retaliating against Jon Doe for his participation in the Title IX process by charging him with "dishonesty" while disregarding Jane Roe's dishonesty in the same process.

(f)    Failure to abide by its Student Conduct Code which requires any complaint to "be filed with the Director of Student Accountability and Restorative Practices within 30-calendar days of the occurrence or discovery of the alleged infraction(s)."

(g)    Withholding evidence from John Doe, including an audio recording of the Hearing Panel proceedings.

72.     Due to American University's repeated breaches of contract, John Doe has suffered damage in an amount to be determined at trial.

## COUNT 3:  Breach of the Implied Covenant of Good Faith and Fair Dealing

73.     Plaintiff incorporates by reference in this paragraph all allegations set forth in this Complaint as if fully restated here.

74.     John Doe and American University entered into a contract for the provision of educational services.

75.     The District of Columbia imposes on every contract an implied covenant of good faith and fair dealing.  The implied covenant of good faith and fair dealing requires each contracting party, including American University, to act in a manner that does not destroy or injure the other party's right to receive the benefits of the contract, here John Doe's.  This includes refraining from conduct that is arbitrary, capricious, or unreasonable, evades the spirit of the contract, willfully renders imperfect performance, or interferes with the other party's ability to perform the contract.

76.     As alleged above, American University breached the implied covenant of good faith and fair dealing by conducting an arbitrary, unfair, and biased disciplinary process against John Doe and applied selective, double standards favoring the female student, in particular Jane Roe, at the expense of John Doe, the male student.

77.     To the extent that any terms of American University's policies as applied to John Doe do not constitute binding promises enforceable as breach of contract, American's arbitrary disregard of its policies and their negation by American University breached the implied covenant of good faith and fair dealing.

78.     American University's breach of the implied covenant of good faith and fair dealing caused John Doe damage in an amount to be determined at trial.

**COUNT 4:**   **District of Columbia Human Rights Act, D.C. Code, § 2-1401.01 et seq.**

79.     Plaintiff incorporates by reference in this paragraph all allegations set forth in this Complaint as if fully restated here.

80.     The District of Columbia Human Rights Act ("DCHRA") states, *inter alia*, that "an educational institution" may not: "deny, restrict, or to abridge or condition the use of, or

access to, any of its facilities, services, programs, or benefits of any program or activity" " for a discriminatory reason, based upon … sex …."

81.    As alleged above, American University discriminated against John Doe on the basis of sex, and Mr. Doe's sex as male was a motivating factor in American's biased and selective handling of Mr. Doe's Title IX complaint against Ms. Roe and her Title IX complaint against him, in the following respects.

82.    American committed the following illegal violations of the DCHRA, by without limitation:

(a)  Suspending John Doe;

(b)  Imposing a permanent record of student discipline and branding John Doe a sex offender;

(c)  Retaliating against John Doe for his participation in the Title IX process by charging him with "dishonesty";

(d)  Evicting John Doe housing in violation of D.C. Human Rights Act § 2-1402.21.

(e)  Removing John Doe from his compensated position as a Resident Assistant in violation of D.C. Human Rights Act § 2–1402.11.

83.    In doing so, American University acted out of venal motive and actual malice toward John Doe, nowhere more evident, by way of example, than in its malicious retaliation against John Doe for alleged "dishonesty" as a Student Code of Conduct violation.

84.    American is therefore liable under the D.C. Human Rights Act, and as a result of American University's illegal discrimination in violation of the D.C. Human Rights Act, John Doe suffered damage in an amount to be recovered at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff John Doe prays this Court to enter judgment in his favor and grant the following relief:

  i.  DECLARE that Defendant American University violated Title IX, 20 U.S.C. § 1681 and the District of Columbia Human Rights Act, § 2-1403.41 by discriminating against John Doe on the basis of sex;

  ii.  DECLARE that Defendant American University retaliated against John Doe in violation of Title IX, 20 U.S.C. § 1681 and the District of Columbia Human Rights Act, § 2-1402.61;

  iii.  DECLARE that Defendant American University breached its contract with John Doe and unredacted the implied covenant of good faith and fair dealing inherent to its contractual relations with Mr. Doe;

  iv.  ORDER Defendant American University to vacate and expunge John Doe's disciplinary record of all illegal sexual misconduct sanctions and disciplinary records;

  v.  ORDER Defendant American University to pay John Doe direct damages in such amounts as are determined at trial;

   • ORDER Defendant American University to pay punitive damages under the D.C. Human Rights Act, § 2-1403.16(f);

  vi.  ORDER Defendant American University to pay John Doe's reasonable attorney's fees and costs under 42 U.S.C. § 1988(b) and the D.C. Human Rights Act, § 2-1403.13(a)(1)(E); and

  vii.  ORDER such other relief as this Court deems just and proper.

26

Respectfully submitted,

Michael Thad Allen
*Admitted pro hac vice*
ALLEN HARRIS PLLC
PO Box 404
Quaker Hill, CT 06375
(860) 772-4738
mallen@allenharrislaw.com

/s/ Stephen C. Leckar

Stephen C. Leckar, D.C. Bar # 281691
KALBIAN HAGERTY LLP
888 17th St., NW, 12th Floor
Washington, D.C. 20006
(202) 223-5600
(Fax) 223-6625
sleckar@kalbianhagerty.com

*Counsel for Plaintiff, John Doe*

27