# UNITED STATES DISTRICT COURT
# FOR
# THE DISTRICT OF COLUMBIA

JOHN DOE,

        PLAINTIFF

  VS.

AMERICAN UNIVERSITY,

        DEFENDANT.

Civil Case No. 1:25-cv-03866-ACR

DATE: July 24, 2026

### RESPONSE TO NOTICE OF INTENT TO FILE MOTION TO DISMISS

In compliance with the Court's Standing Order in Civil Cases, R. 7(h), Defendant John Doe submits this Response to Plaintiff's Notice of Intent to File Motion to Dismiss.  ECF No. 37.

## I.    TITLE IX CLAIM

Defendant American University (the "University") proposes to dismiss Doe's Title IX claim (Count 1) of the Amended Complaint's (AC) because Doe allegedly fails four rigid doctrinal tests. In effect, the University argues there are only a few discrete "buckets" in which a student may carry his burden on a Title IX claim.  The University lays these out as: 1) a deliberate indifference claim (ECF No. 37, ¶ 2-4); 2) a "selective enforcement" claim (id., ¶ 5), 3) an "erroneous outcome" claim (id., ¶ 6), and 4) a retaliation claim (id. ¶ 7).

But federal courts no longer apply rigid doctrinal tests in this manner.  Defendants' doctrinal theories derive from an early Second Circuit case, *Yusuf v. Vassar Coll.*[1]  Outside the Second Circuit, few courts now follow this rigid doctrinal approach.  Rather, courts allow evidence sorted into *Yussuf's* discreet doctrinal "buckets" to pour over into a more holistic analysis.  Then Seventh-Circuit Justice Amy Coney Barrett established this approach in *Doe v. Purdue Univ.*[2]  *Purdue* rejected the "need to superimpose doctrinal tests" because "these categories simply describe ways in which a

---

[1] 35 F.3d 709 (2d Cir. 1994).
[2] 928 F.3d 652, 667-668 (7th Cir. 2019).

1

plaintiff might show that sex was a motivating factor in a university's decision to discipline a student."[3] *Purdue* and similar decisions "ask … more directly: do the alleged facts, if true, raise a plausible inference that the university discriminated against [a male student] 'on the basis of sex'?"[4] District Courts in this circuit have now incorporated the *Purdue* approach.[5]

A decision released just days ago by the Third Circuit summarizes this approach: "we look at the 'total mix of information' supporting a plaintiff's claim … which may include, among other things, allegations that a similarly situated female was treated more favorably by the university or … allegations of procedural irregularities in the university's disciplinary proceedings."[6]  Plaintiffs are "'free to characterize their claims however they wish'"; and contrary to Defendant here, plaintiffs "are not limited to alleging a particular factual scenario."[7]

Non-exhaustive factors that courts consider in contemporary, more flexible "total-mix" approach include:

- Pressure from the media, the student body, or trustees, to skew enforcement against male students (as exemplified here by campus activists' publications, not least by Jane Roe and her roommate, alleging wildly inaccurate statistics of rape on campus and lobbying for differential enforcement of sexual misconduct rules against male students; see e.g. AC, ¶¶ 65-66);

- Selective enforcement of rules against male and female students (as where Doe and Roe provided contemporaneous recorded admissions of consent, but the University held only the male's admission against him while disregarding the female's admission of consent; see e.g. AC, ¶¶ 54-55);

- Deliberate indifference (as where harassment of John Doe went undisciplined in derogation of anti-harassment rules (see e.g. AC, ¶¶ 28-30);

- Different standards for weighing credibility and evidence for male and female students (as where the University uncritically accepted Roe's

---

[3] *Id.*
[4] *Id.* at 668.
[5] *Doe v. Am. Univ.*, No. 19-cv-03097 (APM), 2020 U.S. Dist. LEXIS 171086, at *20-*22 (D.D.C. Sep. 18, 2020)
[6] *Doe v. Trs. of Princeton Univ.*, No. 25-2014, __ F.4th __, 2026 LX 332740, at *20-*21 (3d Cir. July 21, 2026).
[7] *Id.* at *20 quoting *Doe v. Univ. of the Scis.*, 961 F.3d 203, 209 (3d Cir. 2020).

> obviously contradicted assertions of "black out," which wiped away only her memories of evidence exculpatory for Doe; see e.g. AC, ¶¶ 55-56);

- Rejection of male witness' and acceptance of female witness' testimony; or pursuing evidence from female parties but not male parties (see e.g. AC, ¶¶ 45-46);

- Deviation from rules and policies to the disadvantage of the male student (as where the University refused to protect John Doe from retaliation and withheld evidence from him; see e.g. AC, ¶¶ 48-49, 58);

- Whether the outcome supports an inference of bias (as where a contemporaneous recorded conversation indicated both parties' consent to disputed sexual activity, but the University only credited Roe's account as to why her "yes" somehow actually meant "no"; AC, ¶¶ 54-55).[8]

Under contemporary Title IX jurisprudence, John Doe has adequately pleaded facts indicating the University's skewed, results-driven process based on sex. With regard to Doe's theory of retaliation, however, Defendant is correct. Retaliation is "another form of intentional sex discrimination encompassed by Title IX's private cause of action."[9] That is, retaliation is an independent theory. Here, only the male student, Doe, was prosecuted for "dishonesty" (AC, ¶¶ 60-61)—not only in express violation of the University's Title IX Policy but also long after its Honor Code's time limitation had run. AC, ¶ 61. Yet the University never similarly prosecuted the female student, Roe (or any other similarly situated female), for dishonest testimony. AC, ¶ 60.

Finally, to suggest that Jane Roe is not a viable comparator yet again asks the Court to view the case through an overly narrow doctrinal lens. "[I]t is not necessary that the comparators engaged in the exact same offense; what is required is merely that the offenses are of comparable

---

[8] See e.g., *Doe v. Am. Univ.*, No. 19-cv-03097 (APM), 2020 U.S. Dist. LEXIS 171086, at *26-*27 (D.D.C. Sep. 18, 2020) (weighing factors); *Doe v. Trs. of Princeton Univ.*, at *27-*35 (enumerating non-exclusive evidentiary factors to be weighed). See also *Doe v. William Marsh Rice Univ.*, 67 F.4th 702, 711 (5th Cir. 2023) ("[A]t some point an accumulation of procedural irregularities all disfavoring a male respondent begins to look like a biased proceeding"); *Doe v. Univ. of Ark.-Fayetteville*, 974 F.3d 858, 865 (8th Cir. 2020) ("decision that is against the substantial weight of the evidence . . . may give rise to an inference of bias . . . ."); *Purdue Univ.* at 669 (observing strongest fact demonstrating sex discrimination was decision-maker's choice "to credit [the complainant's] account without hearing directly from her").
[9] *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005)

seriousness."[10]  Jane Roe remains "similarly situated" despite the irrelevant distinction that she claimed (or more accurately misrepresented) being too intoxicated to consent (in defiance of her own contemporaneous, recorded statements and in defiance of the science concerning THC's effect on the human brain).  Doe and Roe were each complainant and respondents, disputing the same sexual acts.  They were not just similarly situated; they were identically situated; and their claims were of "comparable seriousness."

## II.    CONTRACT-BASED CLAIMS

Plaintiff has adequately pleaded the elements of breach of contract.  AC, ¶¶ 69-72 (Count 2).  "Under D.C. law … the relationship between a university and its students is contractual in nature."[11]  The manuals, handbooks, and catalogues of the University make out its contractual promises to Doe.[12]  And Doe has adequately pleaded the University's breach of those polices.  Similarly, in D.C., "[a]ll contracts contain an implied duty of good faith and fair dealing, which means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."[13]  Doe must and has pleaded "bad faith or conduct that is arbitrary and capricious."[14]  AC, ¶¶ 73-78.

## III.    D.C. HUMAN RIGHTS ACT (DCHRA)

For the same reasons that Doe has adequately pleaded his Title IX claims, his DCHRA claim will survive.  AC, ¶¶ 79-84 (Count 4).  Where a plaintiff pleads a viable Title IX claim, this suffices to survive a 12(b)(6) motion on a DCHRA claim for the same illegal discrimination.[15]

---

[10] *Washington v. Wash. Metro. Area Transit Auth.*, 330 F. Supp. 3d 232, 243 (D.D.C. 2018).
[11] *Doe v. Am. Univ.*, 2020 U.S. Dist. LEXIS 171086, at *37.
[12] *Id.* at *37.
[13] *Id.* at *43.
[14] *Id.* at *44.
[15] See e.g. *Doe v. Am. Univ.*, 2020 U.S. Dist. LEXIS 171086, at *30-*31.

DATE: <u>July 24, 2023</u>

Respectfully submitted,

_____

Michael Thad Allen
ALLEN HARRIS PLLC
Admitted *pro hac vice*
PO Box 404
Quaker Hill, CT 06375
(860) 772-4738
mallen@allenharrislaw.com

*/s/ Stephen C. Leckar*
Stephen C. Leckar, D.C. Bar # 281691
KALBIAN HAGERTY LLP
888 17th St., NW, 12th Floor
Washington, D.C. 20006
(202) 223-5600
(Fax) 223-6625
sleckar@kalbianhagerty.com

*Counsel for Plaintiff, John Doe*

5

**CERTIFICATE OF SERVICE**

I hereby certify that on the date that appears in the header to this document, a true and correct copy of the foregoing was electronically filed via CM/ECF and served via Notice of Electronic Filing on the following:

James A. Keller
1735 Market Street, Suite 3400
Philadelphia, PA 19103-7504
Tel: (215) 972-7777
james.keller@saul.com

Timothy D. Intelisano (D.C. Bar. No. 90033254)
1919 Pennsylvania Avenue NW, Suite 550
Washington, D.C. 20006
Tel: (202) 342-3447
timothy.intelisano@saul.com

*/s/ Michael Thad Allen*
Michael Thad Allen, esq.